**REEDER ASSOCIATES II,**
Appellant–Plaintiff,

v.

**CHICAGO BELLE, LTD., an Illinois Corporation, Cerestar USA, Inc., f/k/a American Maize Products Co., f/k/a Western Glucose Co., Hammond Bridge Roadworks, LLC, an Indiana Limited Liability Company, and County of Lake, State of Indiana, Appellees–Defendants.**

No. 45A03–0311–CV–473.

Court of Appeals of Indiana.

April 30, 2004.

Kenneth D. Reed, Abrahamson & Reed, Hammond, IN, Attorney for Appellant.

Andrew V. Giorgi, Crown Point, IN, Ronald A. Damashek, Pro Hac Vice, Stahl Cowen Crowley LLC, Chicago, IL, Attorneys for Appellee Chicago Belle, Ltd.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Plaintiff Reeder Associates II ("Purchaser") appeals the trial court's

grant of attorney fees to Appellee–Defendant Chicago Belle, Ltd., an Illinois Corporation, ("Owner").[1] We reverse.

## Issue

Purchaser raises two issues, which we consolidate and restate as whether the trial court erred by awarding attorney fees in the amount of $49,348.76 to Owner pursuant to Indiana Code Section 6–1.1–25–13.

## Facts and Procedural History[2]

On February 13, 1999, as a result of Owner's nonpayment of property taxes, the Lake County Commissioners ("Commissioners") obtained a tax lien on the property pursuant to Indiana Code Section 6–1.1–24–6.[3] *Reeder Assoc. II v. Chicago Belle, Ltd.*, 778 N.E.2d 828, 830 (Ind.Ct. App.2002), *trans. denied* (*"Reeder II"*). On February 17, 1999, the Commissioners transferred the property to Purchaser for $8,500.00 by way of a Commissioner's quit-claim deed.

Subsequently, in August of 2000, Owner "became aware of the tax sale proceeding and made attempts to redeem the property." *Id.* at 831. On September 22, 2000, Owner filed a motion to vacate the issuance of the tax deed in a separate cause of action.[4] In a letter to Purchaser, also dated September 22, 2000, Owner made the following proposition:

> Enclosed you will find a copy of a Motion, filed this date, requesting that your tax deed to the property involved be voided.
>
> If you agree with our position (which it seems to me is indefensible) perhaps you are prepared to voluntarily transfer record title to [Owner] (or agree to the entry of judgment to that effect) in consideration of the payment of any and all sums required to be paid by statute. If so, please contact me immediately so that the same can be accomplished and further expensive litigation avoided.

Appellant's App. at 130.

On October 5, 2000, Purchaser filed a separate action to quiet title. These actions were eventually consolidated, and Owner filed a counterclaim against Purchaser seeking to quiet title in its favor and also requesting attorney fees and costs. On June 7, 2001, Owner tendered to Purchaser a check in the amount of $20,199.92, representing: (1) the purchase price of $8,500.00 and 10% interest there-

---

1. In its complaint to quiet title, Purchaser also named the following entities as defendants: Cerestar USA, Inc., f/k/a American Maize Products Company, f/k/a Western Glucose Company, Hammond Bridge Roadworks, LLC, and Lake County, State of Indiana. However, these named defendants are not parties to this appeal.

2. In its reply brief, Purchaser moved to strike portions of Owner's Appellee's Brief and Appendix because they do not comply in form with the Indiana Appellate Rules. We decline Purchaser's invitation to strike; however, we remind Owner that, pursuant to Indiana Appellate Rule 22(C), "[a]ny factual statement shall be supported by a citation to the full page where it appears in an Appendix, and if not contained in an Appendix, to the page in the Transcript or exhibits." We also remind Owner that "[a]ll pages of the Appendix shall be numbered at the bottom consecutively, without obscuring the Transcript page numbers...." Ind. Appellate Rule 51(C).

3. Indiana Code Section 6–1.1–24–6(a) (1998) provided that:

   > When a tract or an item of real property is offered for sale under this chapter for two (2) consecutive tax sales and an amount is not received equal to or in excess of the minimum sale price prescribed in section 5(e) of this chapter, the county acquires a lien in the amount of the minimum sale price. This lien attaches on the day after the last date on which the tract or item was offered for sale the second time.

4. This motion was filed in Cause Number 45C01–0010–CP–01302, which was later consolidated into Purchaser's action to quiet title.

on; (2) 1998 property taxes and 10% interest thereon; (3) 1999 property taxes and 10% interest thereon; and (4) 2000 property taxes and 10% interest thereon.

On August 8, 2001, Owner filed a motion for summary judgment. On March 6, 2002, the trial court granted summary judgment to Owner, thereby, voiding Purchaser's quitclaim deed and quieting title to the property in favor of Owner. Essentially, the trial court concluded that the statutory notices provided to Owner were defective. The trial court also set a hearing concerning Owner's request for attorney fees.

Purchaser appealed the trial court's grant of summary judgment in favor of Owner, arguing, first, that the tax sale notices—which were sent to Owner—were adequate and, second, that the trial court erred by setting a hearing on Owner's request for attorney fees. *Reeder II*, 778 N.E.2d at 830. After determining that the statutory notices were inadequate, another panel of this court affirmed the trial court's entry of summary judgment to Owner, as well as the trial court's action of scheduling a hearing on Owner's request for attorney fees. *Id.* at 834–35. The *Reeder II* court also held that because the

issue of attorney fees and costs was still pending in the trial court, such issue was not ripe for appellate review. *Id.* at 835.

On August 20, 2003, after conducting a hearing, the trial court ordered Purchaser to pay attorney fees and costs to Owner in the amount of $49,348.76. Purchaser filed a motion to correct error, which the trial court denied. This appeal by Purchaser ensued.

### Discussion and Decision

■ On appeal, Purchaser argues that the trial court erred by awarding attorney fees and costs to Owner pursuant to Indiana Code Section 6–1.1–25–13.[5] The general rule in Indiana is that each party to litigation must pay his or her own attorney fees. *Morgan County v. Ferguson*, 712 N.E.2d 1038, 1043 (Ind.Ct.App.1999). However, an award of attorney fees may be authorized by contract, rule, statute, or agreement. *Id.* Indiana Code Section 6–1.1–25–13, which permits an award of attorney fees, provides that:

(a) When the grantee of an ineffectual tax deed, or his successors or assigns, receives payment for the amount which he is entitled to receive under section 12(c)[ [6]] of this

---

5. The statutes governing tax sales have been amended since the events in this case occurred. Accordingly, citations to these statutes, unless otherwise noted, are to the 1998 edition of the Indiana Code, which was the version in effect at that time.

6. Indiana Code Section 6–1.1–25–12 provides that:
   (a) If the conditions prescribed in subsection (b) of this section exist, the grantee of a deed executed under this chapter, or his successors or assigns, acquires a lien on the real property in an amount equal to the sum of:
   (1) the price paid at the tax sale for the real property;
   (2) the taxes and special assessments paid by the grantee, or his successors or assigns, subsequent to the sale; and

(3) any amount due the grantee, or his successors or assigns, as an occupying claimant.
(b) The grantee, or his successors or assigns, shall acquire a lien under this section only if:
   (1) the tax deed is ineffectual to convey title;
   (2) the taxes or special assessments for which the real property was sold were properly charged to that property and were unpaid at the time of sale; and
   (3) the real property has not been redeemed.
(c) The grantee, or his successors or assigns, may recover from the original owner of the real property, the owner of a life estate in the real property, or any other person primarily liable for the payment of the taxes

chapter, he shall execute, acknowledge, and deliver a deed releasing the lien on the real property which he has acquired under section 12(a) of this chapter. The grantee shall execute and deliver the deed to the person who makes the payment.

(b) If the grantee, or his successors or assigns, fails to execute, acknowledge, or deliver a deed as required by this section, the person who makes the payment may initiate an action to quiet title to the real property. When the payor initiates such an action, the grantee, his successors or assigns, is liable for the court cost and the payor's reasonable attorney fees which result from the action.

Thus, here, the propriety of the trial court's award turns on the interpretation of a statute, i.e., Indiana Code Section 6–1.1–25–13. The interpretation of a statute by a trial court is a question of law to which this court owes no deference. *Id.*

In the present case, Purchaser appears to argue that the trial court erroneously granted Owner's request for attorney fees pursuant to Indiana Code Section 6–1.1–25–13 because the statute does not apply to property acquired by a county under Indiana Code Section 6–1.1–24–6(a). We disagree with this premise but determine that Owner failed to comply with the statutory prerequisites necessary to recover attorney fees. In so concluding, we are required to analyze several related Indiana Code sections. It is a basic rule of statutory construction that statutes relating to the same general subject matter are *in pari materia* and should be construed together so as to produce a harmonious statutory scheme. *In re Visitation of J.P.H.,* 709 N.E.2d 44, 46 (Ind.Ct.App.1999). Moreover, we will reject an interpretation of a statute that produces an absurd result. *Id.*

At the outset of our analysis, we observe that if an owner of real estate fails to pay the property taxes, the property may be sold in an effort to satisfy the tax obligation. *Reeder II,* 778 N.E.2d at 831. The tax sale process is purely a statutory creation and requires material compliance with each step of the governing statutes, Indiana Code Sections 6–1.1–24–1 through –14 (tax sale), and 6–1.1–25–1 through –19 (redemption and tax deeds). *Id.* While the issuance of a tax deed creates a presumption that a tax sale and all of the steps leading up to the issuance of the tax deed are proper, this presumption may be rebutted by affirmative evidence to the contrary.

Here, the Commissioners acquired a lien over Owner's property under Indiana Code Section 6–1.1–24–6(a). As a result, the Commissioners should have received a tax sale certificate, endowing the Commissioners with the same rights as a purchaser. *See* Ind.Code §§ 6–1.1–24–6(b),[7] 6–1.1–24–

and special assessments upon the real property an amount equal to the sum of:
(1) the amount of the lien prescribed in this section;
(2) interest at the rate of ten percent (10%) per annum on the amount of the lien; and
(3) all other lawful charges.

7. Indiana Code Section 6–1.1–24–6 provides, in part, that:
(b) When a county acquires a lien under this section, the county auditor shall issue a tax sale certificate to the county in the manner provided in section 9 of this chapter.... *When a county acquires a certificate under this section, the county has the same rights as a purchaser.* However, the county should hold the property for the taxing units described in subsection (c).
(c) When a lien is acquired by a county under this section, no money shall be paid by the county. However, each of the taxing units having an interest in the taxes on the tract

9.[8] A certificate of sale is assignable and, when assigned, "the assignee acquires the same rights and obligations that the original purchaser acquired." *See* Ind.Code § 6–1.1–24–9(c).[9] Thus, when Purchaser gave the Commissioners $8,500.00 for the disputed property, it became an assignee endowed with the same rights and obligations that the Commissioners possessed.

Further, Indiana Code Section 6–1.1–25–4(a)(3) provides that if a certificate of sale has been issued under Indiana Code Section 6–1.1–24–9 and the real property is not redeemed within one hundred and twenty days after the county acquired a lien on the property under Indiana Code Section 6–1.1–24–6, "the county auditor shall, upon receipt of the certificate and subject to the limitations contained in this chapter, execute and deliver a deed for the property to the purchaser." *See* Ind.Code § 6–1.1–25–4(a)(3). In the present case, on February 19, 1999, the Commissioners issued a Commissioners' quitclaim deed to Purchaser. In so doing, the Commissioners assigned their interest in the property to Purchaser. Because Owner did not redeem the property within one hundred and twenty days of the date at which the Commissioners acquired a lien on the property, i.e., February 13, 1999, the Commissioners'

quit-claim deed, if valid, vested in Purchaser "an estate in fee simple absolute, free and clear of all liens and encumbrances created or suffered before or after the tax sale except those liens granted priority under federal law and the lien of the state or a political subdivision for taxes and special assessments...." *See* Ind.Code § 6–1.1–25–4(d).

The Commissioners' quitclaim deed serves as prima facie evidence of the propriety of the tax sale proceedings and of the validity of the deed. *See id.* However, the presumption that the Commissioners' quit-claim deed vested good title in Purchaser may be, and indeed was, rebutted by affirmative evidence to the contrary, i.e., evidence that the statutory notices provided to Owner were inadequate. *See Reeder II,* 778 N.E.2d at 834–35. Accordingly, the Commissioners' quitclaim deed was ineffective to transfer title in the property, in fee simple absolute, to Purchaser. *See id.*

■ In the event of an ineffectual tax deed, Indiana Code Section 6–1.1–25–13(a), the statute at issue, contemplated a procedure whereby the payor (i.e., Owner) *tenders payment* to the grantee or assign of an ineffectual tax deed (i.e., Purchaser) and, in exchange, the grantee or assign

---

shall be charged with the full amount of all delinquent taxes due them.
(Emphasis added).

**8.** Indiana Code Section 6–1.1–24–9 provides, in pertinent part, that:
  (a) Immediately after a tax sale purchaser pays the bid, as evidenced by the receipt of the county treasurer, or immediately after the county acquires a lien under section 6 of this chapter ..., the county auditor shall deliver a certificate of sale to the purchaser or to the county.... The certificate shall be signed by the auditor and registered in the auditor's office....
  (b) When a certificate of sale is issued under this section, the purchaser acquires a lien against the real property for the entire

amount that he paid. The lien of the purchaser is superior to all liens against the real property which exist at the time the certificate is issued.

**9.** Indiana Code Section 6–1.1–24–9(c) provides that:

  A certificate of sale is assignable. However, an assignment is not valid unless it is endorsed on the certificate of sale, acknowledged before an officer authorized to take acknowledgments of deeds, and registered in the office of the county auditor. *When a certificate of sale is assigned, the assignee acquires the same rights and obligations that the original purchaser acquired.*
  (Emphasis added).

executes, acknowledges, and delivers a deed releasing the lien on the real property. If the grantee or assign fails to execute, acknowledge, or deliver a deed and, as a consequence, the payor is compelled to initiate an action to obtain title to the real property, Indiana Code Section 6–1.1–25–13(b) permits the payor to recover attorney fees and costs from the grantee or assign. Reading these statutes *in pari materia*, we hold that, in general, Indiana Code Section 6–1.1–25–13 applies to property acquired by a county under 6–1.1–24–6(a). However, crucial to recovering attorney fees is the tender of payment to the Purchaser in an amount that satisfies the statutory prerequisites of redemption. *See* Ind.Code § 6–1.1–25–13.

 Here, the record reveals that, on February 13, 1999, as a result of Owner's nonpayment of property taxes, the Commissioners obtained a tax lien on the property and subsequently transferred the property to Purchaser for $8,500.00 by way of the quitclaim deed. The evidence further demonstrates that, on September 22, 2000, Owner filed a motion to vacate the issuance of the tax deed with the trial court. Owner also asked Purchaser to voluntarily transfer record title to the property to Owner "in consideration of the payment of any and all sums required to be paid by statute." Appellant's App. at 130. However, Owner did not tender payment to Purchaser before it initiated the action to vacate the issuance of the tax deed. Rather, approximately nine months later, on June 7, 2001, Owner tendered to Purchaser a check in the amount of $20,199.92, representing: (1) the purchase price of $8,500.00 and 10% interest thereon; (2) 1998 property taxes and 10% interest thereon; (3) 1999 property taxes and 10% interest thereon; and (4) 2000 property taxes and 10% interest thereon.

Because Owner commenced the equivalent of an action to quiet title without first tendering the requisite check to Purchaser, it has not complied with the prerequisites necessary to invoke the attorney fees provision of Indiana Code Section 6–1.1–25–13(b). As such, the statute is inapplicable to the case at bar and the trial court erred by granting attorney fees and costs, in the amount of $49,348.76, to Owner.

 Moreover, we observe that, in the present case, the validity of Purchaser's title to the property was disputed and only resolved by another panel of this Court in *Reeder II.* It would appear that where there is a legitimate good faith dispute regarding title to property acquired by a tax sale or a Commissioner's deed, the purchaser has the right to defend his or her title without being subjected to payment of the adversary's attorney fees, until such time that the title issue is resolved. If and only when title has been quieted in favor of the original owner and the owner tenders to purchaser the appropriate amount required by Indiana Code Section 6–1.1–25–12(c), is the purchaser obligated to execute, acknowledge, or deliver the deed to the owner or risk being subjected to a claim for attorney fees pursuant to Indiana Code Section 6–1.1–25–13(b). Such was not the case here.

For the foregoing reasons, we reverse the trial court's award of attorney fees to Owner.

Reversed.

RILEY, J., and DARDEN, J., concur.