Anna H. COCHRAN, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 33A01–0605–CV–174.

Court of Appeals of Indiana.

Jan. 9, 2007.

Anthony J. Saunders, New Castle, IN, Attorney for Appellant.

Steve Carter Attorney, General of Indiana, David Steiner, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Chief Judge.

Anna H. Cochran appeals the judgment rendered by the trial court, which over-

ruled her objections and denied her motion to dismiss the State of Indiana's complaint for the appropriation of her real estate pursuant to the power of eminent domain conferred upon the Indiana Department of Transportation ("INDOT"). She raises one issue, which we restate as: whether the trial court erred in determining that the State has the right pursuant to IC 8–23–6–2 to acquire real estate interests for a drainage system needed in a reconstruction project on an existing state highway.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Cochran is the owner of real estate in New Castle, Indiana, which is located in Henry County. Her land is situated approximately one mile from State Road 103("S.R.103"). The State, acting through INDOT, adopted plans to reconstruct S.R. 103 in New Castle. As part of this project, the State alleged that it was necessary to build a separate storm sewer to accommodate water run-off from the reconstructed S.R. 103 and that the storm sewer could not be connected to the existing combined storm and sanitary sewer lines because of public health and environmental concerns and its own internal policy. The State sought to exercise its eminent domain power over Cochran's land for the purpose of constructing this new drainage system for the reconstructed S.R. 103.

On May 19, 2004, the State filed its Complaint for Appropriation of Real Estate, which claimed its eminent domain right to acquire a perpetual easement across the land of Cochran in order to "improve S.R. 103." *Appellant's App.* at 7–11. Cochran filed a Motion to Dismiss and Objections to the proceedings on June

11, 2004. After the trial court heard arguments on Cochran's motion, it entered an order on September 1, 2004 dismissing the State's complaint because IC 8–23–7–2 [1] does not authorize INDOT to acquire land to "improve" state highways, and therefore, the complaint did not state a basis for appropriating the land pursuant to the statute. *Id.* at 15–16. On September 13, 2004, the State filed a motion to reconsider and a motion to file an amended complaint. The trial court granted the State's motion, and on September 20, its "Amended Complaint for Appropriation of Real Estate" was filed. In its amended complaint, the State alleged that the purpose of acquiring Cochran's land was to reconstruct a portion of S.R. 103. *Id.* at 23–27. On October 20, 2004, Cochran filed a second Motion to Dismiss and Objections to the Proceedings. An evidentiary hearing on Cochran's objections was held on September 7 and continued on November 28, 2005.

At this evidentiary hearing, the State presented the testimony of an INDOT hydraulics engineer supervisor, who testified that the State was reconstructing S.R. 103 because of the deteriorating condition of the roadway. *Tr.* at 110. The project consisted of replacing a portion of the roadway in the designated area, constructing sidewalks, and replacing the drainage system. *Id.* As part of the project, the State was constructing a separate storm sewer, which was to run from S.R. 103 and outlet into a natural waterway approximately a mile from the roadway. *Id.* at 119–20. This was the closest natural waterway that could be used for the sewer outlet. The INDOT engineer explained that a separate storm sewer was needed because the existing drainage system con-

---

**1.** IC 8–23–7–2 states that "[t]he department may acquires real property for any purpose necessary to carry out this article, including the following: [t]o locate, relocate, construct, reconstruct, repair, or maintain a state highway...."

sisted of combined storm and sanitary sewer lines, and INDOT had a policy prohibiting the connection of storm sewers to combined sewers. *Id.* at 58, 122.

Evidence was also presented that the city of New Castle had requested that the sewer pipe be increased from twenty-four inches to thirty inches in diameter to accommodate a connection from the city for storm drainage. *Id.* at 42, 48, 56–57. If the city participated in the project, it would be charged $239,000 for this increase in pipe size and connection. The State needed the same size easement through Cochran's land whether the city participated in the project or not. *Id.* at 124–25. At the time of the hearing, the State and the city did not have an agreement relating to New Castle's participation in the project. At the conclusion of the hearing, the trial court entered its findings of fact and conclusions overruling Cochran's objections and denying her motion to dismiss. Cochran now appeals.

## DISCUSSION AND DECISION

■ Cochran argues that the trial court erred when it found that the State had the power to exercise eminent domain over her property pursuant to IC 8-23-6-2. She contends that the trial court erroneously interpreted the State's eminent domain power to include the ability to acquire land for drainage facilities needed in the reconstruction of a state highway. Because she believes that the trial court's determination was contrary to law, she asserts that it should be reversed with instructions to enter an order dismissing the State's complaint.[2]

When the grant or denial of a motion to dismiss turns only on the legal sufficiency of the claim, a determination of fact is not

required. *Stulajter v. Harrah's Ind. Corp.*, 808 N.E.2d 746, 748 (Ind.Ct.App. 2004). Where the trial court's judgment depends on the interpretation of a statute, the review of that judgment is a matter of law. *Id.* Therefore, we apply a *de novo* standard to review Cochran's appeal from the trial court's denial of her motion to dismiss. *Id.*

The first step in interpreting a statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question. *City of N. Vernon v. Jennings Nw. Reg'l Utils.*, 829 N.E.2d 1, 4 (Ind.2005). When a statute is clear and unambiguous, we need not apply any rules of statutory construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. *Id.* When a statute is susceptible to more than one reasonable interpretation, it is ambiguous and must be construed to determine legislative intent. *Nieto v. Kezy*, 846 N.E.2d 327, 335 (Ind.Ct.App.2006).

It is a basic rule of statutory construction that statutes relating to the same general subject matter are *in pari materia* and should be construed together so as to produce a harmonious statutory scheme. *Reeder Assocs. II v. Chicago Belle, Ltd.*, 807 N.E.2d 752, 755 (Ind.Ct.App.2004), *trans. denied.* To determine legislative intent, we read the sections of an act together so that no part is rendered meaningless if it can be harmonized with the remainder of the statute. *City of N. Vernon*, 829 N.E.2d at 4. We also examine the statute as a whole. *Id.* at 4–5. We presume that the legislature intended language in a statute to be applied logically so as to avoid unjust or absurd results. *Nieto*, 846 N.E.2d at 335.

---

**2.** We admonish the State for its use of intemperate language in its brief when it referred to Cochran's argument as "absurd." *Appellee's* Br. at 7, 16. Such language adds nothing to the debate and undermines civility in the practice of law.

IC 8–23–6–2 states, in pertinent part:

> If the construction of a street necessitates the construction of adequate connecting facilities outside the limits of the street to provide for drainage of the street, the necessary mains, laterals, and connections shall be provided for in the plans, included as part of the construction cost, and paid out of the department's appropriation.

Cochran contends that IC 8–23–6–2 only allows INDOT to construct drainage facilities outside of the street limits in the construction of a *new* highway, and because INDOT's proposed plan is for the reconstruction of an *existing* highway, INDOT is not permitted to take her land to construct such drainage facilities. We disagree. Nowhere in IC 8–23–6–2 does it state that its terms only apply to new roads or that INDOT is prohibited from constructing necessary drainage facilities outside of the street limits as part of a plan for the reconstruction of an existing state highway. IC 8–23–6–2 provides that if outside drainage facilities are needed, they should be included in INDOT's plans and should be paid for by INDOT. IC 8–23–6–1 discusses the maintenance and improvement of existing state highways.

It states, in pertinent part:

> The department, to the extent of the funds available for the purpose, shall maintain and, as it determines necessary and as the funds required are available, may construct and improve the roadway of the streets or a part of the streets to the width determined by the department. As part of the construction work, the department shall construct within the limits of a street the curbs and gutters, manholes, catch basins, and the necessary drainage structures and facilities.

IC 8–23–6–1(c). When reading these two statutes together, the word "construction" refers to both new construction and also to reconstruction, maintenance, and improvement of state highways. IC 8–23–6–1(c) states that INDOT shall maintain and may construct and improve state highways in municipalities. The statute then generally states that "as part of the construction work, [INDOT] shall construct within the limits of the street ... the necessary drainage structures and facilities." The phrase "as part of the construction work" refers to the aforementioned maintenance, construction, and improvement of state highways. Therefore, the use of the word "construction" in IC 8–23–6–2, when read with IC 8–23–6–1, refers to both new construction and the maintenance and improvement of existing state highways.

Additionally, the intent behind these two statutes appears to be the proper funding of such drainage structures and facilities. For instance, when INDOT constructs and improves a state highway, IC 8–23–6–1(c) requires INDOT to be responsible for any "curbs and gutters, manholes, catch basins, and the necessary drainage structures and facilities" within the street limits. Likewise, INDOT is responsible under IC 8–23–6–2, when the construction of a street necessitates drainage facilities outside of the street limits, but the statute also requires a proportionate share of the cost to be paid by any municipality that benefits from such facilities when the facilities are to be used for purposes other than draining the street. This situation is exactly what was contemplated in the present project. The city of New Castle had requested an increase in the pipe size to accommodate a connection from the city for storm drainage, and if the pipe size was to be increased, the city was going to pay a proportionate share of the project. If the city decided not to

participate in the project, INDOT would bear the cost of the entire project.

We also consider IC 8–23–2–6, which details INDOT's powers, to help determine whether the State could properly exercise eminent domain over Cochran's land. IC 8–23–2–6 states that INDOT may acquire property in order to carry out its responsibilities and may perform all actions necessary to carry out those responsibilities. IC 8–23–2–6(a)(1), (13). Under IC 8–23–2–4.1, INDOT is responsible for the construction, reconstruction, improvement, maintenance, and repair of state highways. Therefore, INDOT may acquire property in order to carry out its responsibility of reconstructing state highways and may perform all actions necessary to carry out such reconstruction. Clearly, this includes the construction of drainage facilities to accommodate additional run-off from a reconstruction project.

We therefore conclude that the State had the power to exercise eminent domain over Cochran's property for the purposes of constructing drainage facilities outside of the street limits as a part of its reconstruction project of S.R. 103. The trial court did not err when it overruled Cochran's objections and denied her motion to dismiss.

Affirmed.

SHARPNACK, J., and MATHIAS, J., concur.