FOR PUBLICATION



**FILED**

Jan 16 2013, 8:39 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**LEANNA WEISSMAN**
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**DAVID K. STEINER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| NICK DOMASCHKO and EDWINA DOMASCHKO, and their RESPECTIVE TRUSTS, et al, | ) ) ) ) |
| Appellants-Defendants, | ) ) |
| vs. | ) No. 58A01-1206-PL-261 ) |
| STATE OF INDIANA, | ) ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE OHIO CIRCUIT COURT
The Honorable James Humphrey, Judge
Cause No. 58C01-1105-PL-2

**January 16, 2013**

**OPINION – FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Nick Domaschko, Edwina Domaschko, and their respective trusts, et al., (collectively "the Domaschkos") appeal the trial court's order of immediate appropriation and appointment of appraisers. We affirm.

**Issue**

The Domaschkos raise one issue, which we restate as whether the trial court properly determined that the State, through the Indiana Department of Transportation ("INDOT"), was entitled by law to acquire the Domaschkos' property.

**Facts**

The Domaschkos own approximately 900 acres of land in Ohio County between State Road 56 and the Ohio River. On May 16, 2011, INDOT filed a complaint for the appropriation of real estate in connection with a project to improve State Road 56. In addition to temporary rights of way, INDOT sought fee simple ownership of certain portions of the Domaschkos' property. The Domaschkos objected, asserting that some of the real estate INDOT was seeking to appropriate was not related to highway purposes. INDOT filed a motion to overrule the Domaschkos' objections. Eventually, the trial court conducted an evidentiary hearing on the Domaschkos' objections. On May 30, 2012, the trial court issued an order of immediate appropriation and appointment of appraisers. The Domaschkos now appeal.

**Analysis**

The Domaschkos assert that two portions of the land INDOT sought to acquire are not related to the improvement of State Road 56 and, therefore, INDOT was not

2

statutorily authorized to appropriate that property. The first portion of land is a fifty-foot buffer zone associated with the relocation of Thuermer Hollow Creek ("the Creek"). The second is associated with a shared driveway that currently straddles two properties, one owned by the Domasckos and the other owned by the Pate Aberdeen Water Company ("Water Company").

To the extent the trial court's judgment is based on the interpretation of a statute, the judgment is a question of law. See Cochran v. State, 859 N.E.2d 727, 729 (Ind. Ct. App. 2007). "The first step in interpreting a statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question." Id. "When a statute is clear and unambiguous, we need not apply any rules of statutory construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense." Id.

As the Domaschkos point out, pursuant to Indiana Code Section 8-23-2-4.1(4), INDOT is responsible for the construction, reconstruction, improvement, maintenance, and repair of state highways. Further, pursuant to Indiana Code Section 8-23-2-6(a)(1), INDOT may "[a]cquire by purchase, gift, or condemnation, sell, abandon, own in fee or a lesser interest, hold, or lease property in the name of the state, or otherwise dispose of or encumber property to carry out its responsibilities." INDOT is also authorized to "[p]erform all actions necessary to carry out the department's responsibilities." Ind. Code § 8-23-2-6(a)(13).

Accordingly, the Domaschkos concede, "[s]imple statutory construction leads to a clear conclusion—INDOT can take property, but it has to be for the purpose of

3

maintaining and improving state highways." Appellant's Br. p. 10. The Domaschkos argue, however, that INDOT does not have the authority to acquire land to "plant trees or to maintain driveways unrelated to road construction." Id.

In State v. Collom, 720 N.E.2d 737, 741 (Ind. Ct. App, 1999), we observed:

> It has long been established that the necessity of taking property for public use is purely a legislative question and not a proper subject for judicial review; where the intended use is public, this question may be determined by such agency and in such manner as the legislature may designate. Wampler v. Trustees of Indiana University, 241 Ind. 449, 453, 172 N.E.2d 67, 69 (1961). Thus, "a court may not inquire into the administrative determination of the propriety, reasonableness, or necessity for the taking of property by eminent domain by a proper authority, except for fraud, or where the proceeding is a subterfuge for taking property for private use." Cemetery Co. v. Warren School Twp. of Marion County, 236 Ind. 171, 189, 139 N.E.2d 538, 546-47 (1957). As our supreme court has explained:
>
> > The courts have the right to determine the legal authority and right under which the power of eminent domain is exercised. This does not mean, however, that the courts may assume the administrative act of determining the necessity or reasonableness of the decision to appropriate and take the land. To us, this appears to be a matter for the determination of the legislature or the corporate body to whom the legislature has delegated such a decision. We do not think the court has the power to inquire into the wisdom or propriety of such judgment unless a question of fraud or bad faith is raised as where an attempt is made to show that the property taken will not be used for a public purpose, or the proceeding is a subterfuge to convey the property to a private use.
>
> Id., 236 Ind. at 188, 139 N.E.2d at 545 (emphasis in original).

4

* * * * *

> Necessity under Indiana's eminent domain statutes is not limited to the "absolute or indispensable needs of [the State], but is considered to be that which is reasonably proper and useful for the purpose sought." See Ellis v. Public Service Co. of Indiana, Inc., 168 Ind. App. 269, 272, 342 N.E.2d 921, 923 (1976) (discussing utility eminent domain proceedings). Moreover, "[o]ur policy should not be such as to place an undue burden upon the State in acquiring land for such public improvements as highway construction when such improvements are considered to be in the public interest." State v. Heslar, 257 Ind. 307, 315, 274 N.E.2d 261, 266 (1971). All issues concerning the expediency and necessity of the taking of private property "are exclusively for the legislature. Unless the action of the legislature is arbitrary, and the use for which the property is taken is clearly private, the courts will not interfere." Guerrettaz v. Public Service Co. of Indiana, 227 Ind. 556, 561, 87 N.E.2d 721, 724 (1949).

In Collom, we went on to explain the burden is on the party objecting to the appropriation to establish that the taking is not necessary for the purpose sought, and then only on the grounds of fraud, capriciousness, or illegality in the State's determination of necessity. Collom, 720 N.E.2d at 742.

To the extent the issue is properly framed as a challenge to INDOT's statutory authority to acquire land, as opposed to the necessity of the specific acquisition, we are unpersuaded that the property at issue is unrelated to the improvement of State Road 56.

Regarding the buffer zone, at the hearing, INDOT presented evidence that, as part of the project, it wanted to realign the intersection of Thuermer Hollow Road and State Road 56 because the intersection was at an undesirable angle and the realignment would provide a safer intersection and adequate sight distance at the intersection. To realign the road, INDOT would need to relocate the Creek, which runs parallel to the road. To

5

relocate the Creek, INDOT was required to obtain certain permits from the Indiana Department of Environmental Management and the U.S. Army Corps of Engineers. As part of the permitting process, INDOT was required to mitigate the impact of the Creek relocation by installing a fifty-foot buffer zone, which included the planting of trees, along the relocated portions of the Creek.

The Domaschkos claim that the acquisition of the buffer zone is unrelated to the improvement of State Road 56 because the Creek is not a navigable waterway subject to the Clean Water Act and, even if the Creek is subject to the Clean Water Act, adequate mitigation can occur elsewhere. These arguments miss the mark.

Although the Domaschkos offered the testimony of a civil engineer who stated that the buffer zone was not necessary and that the mitigation could be done elsewhere and Nick Domaschko testified that the Creek is often dry, INDOT offered extensive testimony regarding the requirement of the buffer zone. For example, the environmental manager for the project testified that it was not possible to avoid the relocation of the Creek and that the buffer zone was required as part of the permitting process. This is consistent with the testimony of a project engineer, who testified that the project could not have been built without the Creek relocation and that INDOT could not have built the project without the buffer zone. Another engineer testified that the project could not have been built without the permits. This engineer also testified that the project could not have been built without this land acquisition.

This evidence established that the acquisition of the buffer zone is related to INDOT's responsibility to improve State Road 56. See I.C. §§ 8-23-2-6(a)(1), 8-23-2-

6

6(a)(13), 8-23-2-4.1(4); see also Cochran, 859 N.E.2d at 731 (holding that INDOT was statutorily authorized to acquire property in order to carry out its responsibility of reconstructing state highways and perform all actions necessary to carry out such reconstruction, including the construction of drainage facilities to accommodate additional run-off from a reconstruction project). Thus, the Domaschkos have not established that INDOT was not statutorily authorized to acquire the buffer zone.

Regarding the permanent acquisition of land to be used as a shared driveway for the Domaschkos and the Water Company, Domaschkos assert that a permanent right of way is unnecessary because the Water Company has an entrance at another location. However, INDOT presented testimony explaining that the Domaschkos' expert's design was not viable and that a permanent right-of-way was necessary because "[t]he driveway is shared by two property owners, so according to Indiana design manual, we have to take permanent right-of-way. We cannot take temporary right-of way from one owner to build a drive . . . for another." Tr. p. 110. Thus, it is clear that the acquisition of this property is related to the improvement of State Road 56 and, therefore, INDOT is statutorily authorized to acquire the property for the driveway. See I.C. §§ 8-23-2-6(a)(1), 8-23-2-6(a)(13), 8-23-2-4.1(4). The Domaschkos have not established that the trial court erroneously ordered the acquisition of the property associated with the buffer zone or the driveway.

## Conclusion

Because the buffer zone and driveway are related to the improvement of State Road 56, INDOT was statutorily authorized to acquire that property. We affirm.

7

Affirmed.

BAKER, J., and RILEY, J., concur.