ATTORNEY FOR APPELLANT
Corinne R. Finnerty
McConnell & Finnerty
North Vernon, Indiana

ATTORNEYS FOR AMICI CURIAE
Bette J. Dodd
Lewis & Kappes, P.C.
Indianapolis, Indiana

Jo Angela Woods
Indiana Association of Cities & Towns
Indianapolis, Indiana

ATTORNEY FOR APPELLEES
Mary Ann Gay
Versailles, Indiana

Adam Arceneaux
Brian Bailey
Ice Miller
Indianapolis, Indiana

# In the
# Indiana Supreme Court

---

No. 40S01-0404-CV-184

CITY OF NORTH VERNON, INDIANA,

*Appellant (Defendant below),*

v.

JENNINGS NORTHWEST REGIONAL UTILITIES;
VANCE D. FUNKHOUSER, MAX A. WILEY,
NORMA TEEPLE, DONALD MCCAULEY,
LYNN H. CLARK, JOLENE MCQUEEN AND
PAUL MICHAEL IRWIN, IN THEIR CAPACITY AS
TRUSTEES OF THE JENNINGS NORTHWEST
REGIONAL UTILITIES,

*Appellees (Plaintiffs below).*

---

Appeal from the Jennings Superior Court, No. 40D01-9910-CP-296
The Honorable Carl H. Taul, Special Judge

---

On Petition To Transfer from the Indiana Court of Appeals, No. 40A01-0304-CV-145

---

**June 14, 2005**

**Rucker, Justice.**

This case requires us to determine what happens when there is an overlap between the sewage service area of a regional sewer district and the sewage service area of a municipality. Under the facts presented we conclude the municipality prevails.

**Facts and Procedural History**

Located in Jennings County, the City of North Vernon ("the City") operates a wastewater treatment and collection facility. The City has the statutory authority to provide wastewater services inside its corporate boundaries as well as within a ten-mile radius outside its corporate boundaries. In 1996, the Jennings County Commissioners filed a petition with the Indiana Department of Environmental Management ("IDEM") requesting IDEM to form a regional water and sewer district for the northwest portion of Jennings County. IDEM granted the petition and entered an order establishing Jennings Northwest Regional Utilities ("JNRU"). Among other things the order authorized JNRU to provide sewer services to Geneva Township, Center Township, Spencer Township, and portions of Sand Creek Township.

The order excluded the City's corporate boundaries from JNRU's service area. But at the time the order was entered, the City was already providing sewer services to areas of the county that IDEM identified as JNRU's service district. Those areas are within ten miles outside of the City's corporate boundaries. Sand Creek Elementary School ("the School"), which was then in the planning stages for construction, is located within that ten-mile radius.

Both JNRU and the City approached the School about connecting to their respective sewer lines and providing sewer services. Over JNRU's objection, School officials entered into a thirty-year service agreement with the City. The City is currently servicing the School and has done so since the School opened in the year 2000. Although JNRU eventually plans to do so, it had not constructed sewer facilities for the School as late as May 2004.

JNRU filed a complaint against the City seeking a declaratory judgment that JNRU had the exclusive right to serve the School and that the City did not. The City moved to dismiss JNRU's complaint and attached various exhibits in support. As a result, the trial court treated the

2

City's motion as a motion for summary judgment.  See Ind. Trial Rule 12(B)(8).  JNRU responded with its own motion for summary judgment.  After conducting a hearing, the trial court entered summary judgment in JNRU's favor.  Among other things the trial court concluded: (i) the City's right to provide sewer services to Sand Creek Elementary School is contingent upon JNRU's consent and agreement, (ii) JNRU has never agreed or consented to the City's exercise of power to provide sewer services to the School, and (iii) without JNRU's consent or agreement, the City has no right to provide sewer services to the School.  On review the Court of Appeals affirmed the judgment of the trial court.  See North Vernon v. Jennings Northwest Regional Utilities, 799 N.E.2d 1068 (Ind. Ct. App. 2003).  Having previously granted transfer, we now reverse the trial court's judgment.

When reviewing a grant or denial of summary judgment our well-settled standard of review is the same as it is for the trial court: we examine whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law.  Indiana Univ. Med. Ctr., Riley Hosp. for Children v. Logan, 728 N.E.2d 855, 858 (Ind. 2000).  Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law.  Gunkel v. Renovations, Inc., 822 N.E.2d 150, 152 (Ind. 2005).  All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party.  Tibbs v. Huber, Hunt & Nichols, Inc., 668 N.E.2d 248, 249 (Ind. 1996).

**Discussion**

JNRU was created under the auspices of Indiana Code section 13-26-1-1 et seq., which governs the establishment of regional water and sewer districts.  The statute provides in relevant part, "Any area may be established as a regional water, sewage, or solid waste district under this article for one (1) or more of the following purposes: . . . (2) To provide for the collection, treatment, and disposal of sewage inside and outside the district."  Ind. Code § 13-26-1-1.  Once established, a regional district is an "independent municipal corporation" that has only such power and authority as expressly conferred by statute.  Ind. Code §§ 13-26-2-10; 13-26-5-1 to -2.

The City is a municipality as defined by Indiana Code section 36-1-2-11. A municipality has the authority to "acquire, construct, improve, operate, and maintain sewage works under this chapter." Ind. Code § 36-9-23-2(1). With exceptions not applicable here, this authority includes providing sewer services "in areas within ten (10) miles outside its corporate boundaries." Ind. Code § 36-9-23-36. Also applicable in this case is Indiana's Home Rule Act—Indiana Code sections 36-1-3-1 to -9. The Act abrogated the traditional rule that local governments possessed only those powers expressly authorized by statute. Instead the Act expressly broadened a governmental unit's authority to include not only all powers granted to it by statute, but also "all other powers necessary or desirable in the conduct of its affairs, even though not granted by statute." Ind. Code § 36-1-3-4(b)(2). See also City of Gary v. Indiana Bell Tel. Co., Inc., 732 N.E.2d 149, 153 (Ind. 2000); City of Crown Point v. Lake County, 510 N.E.2d 684, 685-86 (Ind. 1987).

Relying on the express statutory authority to provide sewer services within ten miles outside of its corporate boundaries, as well as on the broad provisions of the Home Rule Act, the City contends that it has the exclusive authority to provide sewer services to the School. JNRU acknowledges that the School is located within ten miles outside of the City's corporate borders. However, JNRU counters that the Home Rule Act itself limits the City's authority. In relevant part the Act provides, "a unit[1] may exercise any power it has to the extent that the power: (1) is not expressly denied by the Indiana Constitution or by statute; and (2) *is not expressly granted to another entity*." Ind. Code § 36-1-3-5(1)-(2) (emphasis added). JNRU argues that because IDEM has expressly granted it the authority to provide sewer services to an area within ten miles outside of the City's corporate boundaries, the City must first obtain JNRU's permission before the City can exercise its authority to provide such services within the area. Thus, according to JNRU the trial court correctly entered summary judgment in its favor on this point.

The first step in interpreting a statute is to determine whether the Legislature has spoken clearly and unambiguously on the point in question. Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc., 746 N.E.2d 941, 947 (Ind. 2001). When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken

---

[1] "'Unit' means county, municipality, or township." Ind. Code § 36-1-2-23.

in their plain, ordinary, and usual sense.  Poehlman v. Feferman, 717 N.E.2d 578, 581 (Ind. 1999).  Clear and unambiguous statutes leave no room for judicial construction.  Id.  However when a statute is susceptible to more than one interpretation it is deemed ambiguous and thus open to judicial construction.  Amoco Production Co. v. Laird, 622 N.E.2d 912, 915 (Ind. 1993). And when faced with an ambiguous statute, other well-established rules of statutory construction are applicable.  One such rule is that our primary goal of statutory construction is to determine, give effect to, and implement the intent of the Legislature.  Indiana Civil Rights Comm'n v. Alder, 714 N.E.2d 632, 637 (Ind. 1999).  To effectuate legislative intent, we read the sections of an act together in order that no part is rendered meaningless if it can be harmonized with the remainder of the statute.  AlliedSignal, Inc. v. Ott, 785 N.E.2d 1068, 1078 (Ind. 2003).  We also examine the statute as a whole.  Matter of Lawrance, 579 N.E.2d 32, 38 (Ind. 1991).  And we do not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result.  State ex rel. Hatcher v. Lake Super. Ct., Rm. Three, 500 N.E.2d 737, 739 (Ind. 1986).

At first blush the Home Rule Act appears to be clear and unambiguous.  A municipality "may exercise any power it has to the extent that the power . . . is not expressly granted to another entity."  Ind. Code § 36-1-3-5(a).  But a strict interpretation of this provision, in the context of the facts before us, would produce an absurd result.  More specifically,  such an interpretation is at odds with the express grant of statutory authority given municipalities to operate sewer facilities within and without its corporate boundaries, and at odds with other provisions of the Act as well.  For example the Act also provides, "[T]he policy of the state is to grant units all the powers that they need for the effective operation of government as to local affairs."  Ind. Code. § 36-1-3-2.  By unequivocal language the Legislature specifically abrogated the rule of law declaring that a unit has only the "(1) powers expressly granted by statute; (2) powers necessarily or fairly implied in or incident to powers expressly granted; and (3) powers indispensable to the declared purposes of the unit."  Ind. Code § 36-1-3-4(1)-(3).  The Legislature also specifically abrogated the rule of law that declared, "any doubt as to the existence of a power of a unit shall be resolved against its existence . . . ."  Ind. Code § 36-1-3-3. Rather, the Legislature has said, "Any doubt as to the existence of a power of a unit shall be

5

resolved in favor of its existence," and this is so "even though a statute granting the power has been repealed." Ind. Code § 36-1-3-3(a), (b).

We believe this statutory scheme demonstrates a legislative intent to provide counties, municipalities, and townships with expansive and broad-ranging authority to conduct their affairs. Of course this authority is not without limitations. However we do not think the Act anticipated the rather unique facts of this case, namely, an express grant of authority allowing a regional sewer district to provide sewer services to an area where a municipality is already providing those services to the area. Indeed, most such territorial disputes are resolved during the IDEM permitting process.[2] Here, apparently there was a breakdown in communications. And by the time the City discovered this overlapping boundary problem, it was too late for the City to take curative action.[3]

JNRU suggests that the facts of this case are not at all unique, but rather are strikingly similar to those in Town of Merrillville v. Merrillville Conservancy Dist., 649 N.E.2d 645 (Ind. Ct. App. 1995), trans. denied. In that case, prior to 1992 the town of Merrillville did not have its own sanitation system. Instead the Merrillville Conservancy District and certain other public and semi-private utilities provided the sewer needs of the town. On December 29, 1992, the town adopted an ordinance creating its own sanitary district and sanitation department. The sanitary district included all territory within the corporate boundaries of Merrillville in addition to certain

---

[2] See, e.g., Indiana Code section 13-26-2-10(b)(3), which provides in relevant part, "[i]f an eligible entity" has territory within the proposed district, the order establishing a regional district must "contain provisions protecting the investments of the entities and protecting the rights of the holders of bonds or other obligations issued to provide money for the system." The City is an "eligible entity" within the meaning of the statute. Ind. Code § 13-11-2-62. Nothing in the order establishing JNRU contained any such provision. See Appellant's App. at 44-51. See also Cumberland v. Dep't of Environmental Mgmt., 691 N.E.2d 206, 208 (Ind. Ct. App. 1998) (Petition to establish a regional water and sewer district requested that "'those areas served as [of] the date of formation of the proposed district by existing private, semi-public or public sanitary sewer utilities' . . . be excluded from the District."). No such request appears in the petition to establish JNRU. See Appellant's App. at 26-29.

[3] The City filed a declaratory judgment action in this case challenging the order issued by IDEM. The trial court dismissed the City's claim. On review, the Court of Appeals affirmed on the ground that the City's failure to first seek judicial review of the validity of IDEM's order pursuant to AOPA deprived the trial court of subject matter jurisdiction. City of North Vernon v. Funkhouser, 725 N.E.2d 898 (Ind. Ct. App. 2000).

territory outside the town. The Conservancy District filed a complaint for declaratory judgment requesting that the town ordinance be found void. According to the District, the ordinance violated the Home Rule Act because the power to provide sewer services had already been granted to it under a statute providing for the creation of a conservancy district.[4] Therefore, the District argued, the town of Merrillville was precluded from exercising those same powers. The court agreed and held that because the District had been granted specific powers under the statute to provide for sewage disposal, the town was precluded from exercising conflicting powers under the Home Rule Act. Id. at 652. Specifically the court held, "We conclude that Merrillville is precluded from exercising any powers which have been granted to [the District] under I.C. § 13-3-3, as such would be a violation of I.C. § 36-1-3-5 [providing that a unit "may exercise any power it has to the extent that the power: . . . (2) is not expressly granted to another entity"]." Id.

Acknowledging that Town of Merrillville involved a sewer conservancy district rather than a regional sewer district, JNRU argues the same rationale still applies. And according to that rationale, just as with the District, here JNRU also has been granted specific statutory authority to provide sewer services and thus the City is precluded from exercising conflicting powers under the Act.

We agree that for the purpose of our analysis the distinction between a conservancy district and sewer district is of no moment. Still, the facts here are distinguishable. The conservancy district in Town of Merrillville was already exercising its statutory powers to provide sewer services when the town attempted to provide those identical services under the authority of the Home Rule Act. JNRU is not similarly situated. If anything, JNRU is in a position similar to that of the town by attempting to provide sewer services to an area that was already being provided with such services. In fact the City was providing sewer services under an express grant of statutory authority before IDEM ever created JNRU and established its service district. To interpret the Act as JNRU suggests would in effect allow a regional district to trump a municipality's decision to provide extraterritorial sewer services. We do not believe the Legislature could have intended this result. Indeed we doubt the Legislature even

---

[4] Indiana Code section 13-3-3-2(a)(5) (repealed by P.L.1-1995, Sec. 91, and recodified as I.C. § 14-33-1-1 (a)(5)) granted conservancy districts the specific power to provide for the "collection, treatment, and disposal of sewage and other liquid wastes."

contemplated the facts presented here. Our determination in this regard finds support in Indiana Code sections 36-1-7-1 et seq. (providing for interlocal cooperation agreements) and Indiana Code section 36-1-3-9(d) (detailing the use of such agreements). With these statutes, the Legislature set forth a procedure for the resolution of territorial disputes between two municipalities. There is no such statutory dispute resolution mechanism for territorial boundary disputes between municipalities and regional districts. And because regional districts are not subject to the same statutes applicable to municipalities, the statutes governing interlocal cooperation agreements are not applicable here.[5] Again, disputes of this kind ordinarily are resolved during administrative proceedings.

Our Legislature has encouraged municipalities to plan for the future development of their communities and to protect the health, safety, convenience and welfare of their citizens. See Ind. Code. § 36-7-4-201. In meeting these goals, municipalities prepare and adopt comprehensive plans to serve as a guide for long-term growth and development. See Ind. Code. § 36-7-4-502. Comprehensive plans include the provision of utility services in the municipalities' growth areas. Municipalities rely on their ability to extend their utility services to these anticipated areas.[6]

We must therefore reconcile the broad-ranging authority granted municipalities under the Home Rule Act and Indiana Code section 36-9-23-36 (granting municipalities the authority to provide sewer services "in areas within ten (10) miles outside its corporate boundaries") with the powers granted regional districts under Indiana Code sections 13-26-1 to -14. In doing so we conclude that where there is an overlap between the service area of a regional district and the service area of a municipality, and absent a resolution during the IDEM permitting process, under the "expressly granted" provision of the Home Rule Act, the district prevails unless the municipality was already providing services to the area at the time the district's service area was

---

[5] We thus agree with the Court of Appeals' reasoning and analysis on this point. See Jennings, 799 N.E.2d at 1075-76.

[6] As Amici for Indiana Association of Cities and Towns and the Indiana Municipal Lawyer's Association point out, "Allowing Districts to have veto power over the expansion of a municipality's sewer and water services to areas outside the municipality's corporate boundaries interferes with these plans and the legislature's intent that municipalities have control over their growth and development." Br. of Amici at 10. Their point is well taken.

created.  Because the reverse of the latter is true in this case, the City prevails.  Consequently the City has the exclusive right to provide sewer services to the School.

## Conclusion

We reverse the judgment of the trial court.  This cause is remanded for further proceedings consistent with this opinion.

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.