

**FILED**
Nov 23 2016, 10:17 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kathy Salyer, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Washington Regular Baptist <br> Church Cemetery, <br> *Appellee-Defendant,* <br><br> v. <br><br> Kristy Sams, <br> *Appellee-Intervening Party.* | November 23, 2016 <br><br> Court of Appeals Case No. <br> 69A04-1607-SC-1535 <br><br> Appeal from the Ripley Superior <br> Court <br><br> The Honorable Jeffrey L. Sharp, <br> Judge <br><br> Trial Court Cause No. <br> 69D01-1505-SC-147 |

**Brown, Judge.**

[1] Kathy Salyer appeals from the May 13, 2016 order of the small claims court on her complaint requesting the return of a burial space she had purchased. We reverse and remand.

*Facts and Procedural History*

[2] In 1982, Salyer purchased five contiguous gravesites in Washington Regular Baptist Church Cemetery (the "Cemetery"). Gravesite #15 was located on the northern end of the five gravesites. Moving south from Gravesite #15, Salyer's father was buried at the next site, her first husband was buried at the next site, the next site was empty, and her second husband was buried at the final site at the southern end of the five contiguous sites. Salyer intended to bury her mother at Gravesite #15 and to have herself buried at the site between her first and second husbands.

[3] In January or February of 2014, Salyer noticed that a person named Lowell Johnson had been buried at Gravesite #15. The Cemetery acknowledged that it had inadvertently sold Gravesite #15 twice, first to Salyer and later for the burial of Lowell Johnson. Salyer requested the cemetery to relocate Lowell, the Johnson family objected, and the Cemetery took no action.

[4] On May 18, 2015, Salyer filed a complaint in small claims court alleging that the sale of her burial spot to another individual and the refusal to return it constituted theft, entitling her to treble damages, and requesting "a judgment requiring the [Cemetery] to remove the body from the lot she owns, treble

damages, attorney fees, costs of this action and for all other proper relief."[1] Appellant's Appendix at 8. On April 15, 2016, the court held a bench trial at which it noted that Kristy Sams, the daughter of Lowell Johnson, was an intervening third-party. Salyer testified that her mother had died, that Lowell Johnson was buried where she intended to bury her mother, and that she had her mother's body cremated and buried in the same gravesite as her father.

On May 13, 2016, the court issued an order which provided in part:

> [T]he Court, having heard the evidence, now enters judgment in favor of [Salyer]. However, specific performance is not warranted given that [Salyer] has already taken action by cremating her mother and burying her mother with her father in the north burial site of plot 14 [site adjacent to and south of Gravesite #15].
>
> THEREFORE, under I.C. 23-14-59-2 the appropriate remedy to correct the problem given the conflicting interests of [Salyer] and [Sams] is to compensate [Salyer] with the adjacent burial site just south of her burial site and to refund her $75.00 for the purchase of the lot in question plus court costs in the amount of $94.00.

Id. at 6. Salyer filed a motion to correct errors, which the trial court denied.

### Discussion

Salyer maintains that, because the Cemetery wrongfully buried Johnson at her gravesite, it must relocate Johnson's body so that the site can be restored to her.

---

[1] The chronological case summary ("CCS") indicates that the proceeding was on the small claims docket of the Ripley County Superior Court.

She notes that the legislature directed the course of action for a wrongful burial and cites to Ind. Code § 23-14-59-2. That statute states:

> When a wrongful burial, entombment, inurnment, disinterment, disentombment, or disinurnment referred to in section 1(1) . . . of this chapter occurs, the cemetery owner shall:
>
> > (1) at the expense of the cemetery owner, correct the wrongful burial, entombment, inurnment, disinterment, disentombment, or disinurnment as soon as practical after becoming aware of the error; . . . .

Ind. Code § 23-14-59-2. Salyer notes that the legislature uses the words "shall" and "correct" in the statute and contends that the word "correct" does not mean leaving the status quo, that to correct a wrongful burial the person must be relocated from the improper grave, and that the statute "clearly directed the [C]emetery to do something to fix its mistake in reselling lot #15 and wrongfully burying Mr. Johnson in Kathy Salyer's family burial plot." Appellant's Brief at 10-11. She also notes that the statute does not allow an exception for correcting a wrongful burial when the family objects. She requests this Court to require the Cemetery to correct the wrongful burial by moving Johnson and returning Gravesite #15 to her. The Cemetery has not filed an Appellee's brief.

[7] The first step in interpreting a statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question. *City of N. Vernon v. Jennings Nw. Reg'l Utils.*, 829 N.E.2d 1, 4 (Ind. 2005). When a statute is clear and unambiguous, we need not apply any rules of construction other than to

require that words and phrases be taken in their plain, ordinary, and usual sense. *Id.* When a statute is susceptible to more than one interpretation, it is deemed ambiguous and thus open to judicial construction. *Id.* When faced with an ambiguous statute, our primary goal of statutory construction is to determine, give effect to, and implement the intent of the legislature. *Id.* To effectuate legislative intent, we read the sections of an act together in order that no part is rendered meaningless if it can be harmonized with the remainder of the statute. *Id.* We also examine the statute as a whole and do not presume that the legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result. *Id.* at 4-5. Additionally, where provisions of a statute are in conflict, the specific provision will take priority over the general provision. *Barrett v. City of Brazil*, 919 N.E.2d 1176, 1179 (Ind. Ct. App. 2010), *trans. denied*; *see Nordman v. N. Manchester Foundry, Inc.*, 810 N.E.2d 1071, 1074 (Ind. Ct. App. 2004) ("When two conflicting statutory provisions appear controlling, the statute dealing with a subject in a specific manner controls over the statute dealing with the same subject in general terms.").

[8]     Ind. Code § 23-14-33-6 provides that "'Burial right' means a right of interment, entombment, or inurnment granted by the owner of a cemetery and unless otherwise stated in the deed, certificate, or license given by the owner of the cemetery, is an easement for the specific purpose of burial."

[9]     Ind. Code §§ 23-14-59 is titled "Potential Liability of Cemetery Owner." Ind. Code § 23-14-59-1, which is titled "Immunity generally," provides:

A cemetery owner or anyone acting on behalf of a cemetery owner is *not liable in any action for*:

> (1) *a burial*, entombment, or inurnment *in the wrong lot, grave, grave space, burial space*, crypt, crypt space, or niche . . . .
>
> (2) a disinterment, disentombment, or disinurnment of the wrong deceased remains;
>
> (3) a repositioning of the remains of a deceased that encroach upon an adjacent lot, space, grave, grave space, or burial space;
>
> (4) setting or installing a marker, monument, any type of memorial, or an outer burial container on the wrong lot, space, grave, grave space, or burial space; or
>
> (5) installing any kind of foundation or other type of base for a marker, monument, or any type of memorial on the wrong lot or burial space.

(Emphases added).

[10]  Ind. Code § 23-14-59-2, which is titled "Duties upon wrongful burials," provides in part:

> When a *wrongful burial*, entombment, inurnment, disinterment, disentombment, or disinurnment *referred to in section 1(1)* . . . of this chapter occurs, *the cemetery owner shall*:
>
> > (1) at the expense of the cemetery owner, *correct the wrongful burial*, entombment, inurnment, disinterment, disentombment, or disinurnment as soon as practical after becoming aware of the error; and
> >
> > (2) notify:
> >
> > > (A) the spouse, if living, of the deceased person whose remains were wrongfully buried, entombed,

inurned, disinterred, disentombed, or disinurned, or whose outer burial container was wrongfully placed;

(B) the parents, if living, of a deceased minor child whose remains were wrongfully buried, entombed, inurned, disinterred, disentombed, or disinurned, or whose outer burial container was wrongfully placed;

(C) the person or persons whose marker, monument, memorial, foundation, or base was wrongfully placed; or

(D) the person or persons who authorized the original burial, entombment, inurnment, disinterment, disentombment, or disinurnment;

of the occurrence.

(Emphases added).

[11] We read Ind. Code §§ 23-14-59-1 and -2 together in order that no part is rendered meaningless. *See City of N. Vernon*, 829 N.E.2d at 4. Ind. Code § 23-14-59-2 imposes a specific duty upon a cemetery to correct a wrongful burial. An order that a cemetery owner perform its duty to correct a wrongful burial as mandated by Ind. Code § 23-14-59-2 constitutes an order for specific performance or injunctive relief. Giving effect to the language of both statutes, in the event a wrongful burial occurs and a cemetery fails to correct it as required by Ind. Code § 23-14-59-2, a court may order the cemetery to perform its duty under the statute but may not find the cemetery liable for damages. Based on Ind. Code § 23-14-59-1, the court in this case erred in finding the cemetery liable for damages.

[12]  In addition, an order that a cemetery perform its duty under Ind. Code § 23-14-59-2 constitutes an order for specific performance or injunctive relief, and the small claims court's order that Salyer receive "the adjacent burial site just south of her burial site," Appellant's Appendix at 6, also constitutes an order for injunctive relief. However, Salyer's claim was filed and docketed on the small claims docket of the Ripley County Superior Court. The jurisdiction of a small claims court is limited to that granted by the Constitution or by statute. *Olympus Properties, LLC v. Plotzker*, 888 N.E.2d 334, 337 (Ind. Ct. App. 2008) (citing *Nielsen Buick Jeep Eagle Subaru v. Hall*, 726 N.E.2d 358, 360 (Ind. Ct. App. 2000) ("The jurisdiction of an inferior court, such as the small claims division of a superior court, is limited to that which is granted by the Constitution or statute.")).

[13]  Ind. Code § 33-29-2-4(b) provides:

> The small claims docket has jurisdiction over the following:
>
> (1)  Civil actions in which the amount sought or value of the property sought to be recovered is not more than six thousand dollars ($6,000). The plaintiff in a statement of claim or the defendant in a counterclaim may waive the excess of any claim that exceeds six thousand dollars ($6,000) in order to bring it within the jurisdiction of the small claims docket.
>
> (2)  Possessory actions between landlord and tenant in which the rent due at the time the action is filed does not exceed six thousand dollars ($6,000).
>
> (3)  Emergency possessory actions between a landlord and tenant under IC 32-31-6.

[14] Salyer was not a tenant and could not proceed in small claims court under Ind. Code §§ 33-29-2-4(b)(2) or (3). *See* Ind. Code § 32-31-3-10 (defining "tenant" to mean an individual who occupies a rental unit for residential purposes, with the landlord's consent, and for consideration that is agreed upon by both parties); *Plotzker*, 888 N.E.2d at 337 (concluding the plaintiff was not a tenant and thus could not proceed in small claims court under Ind. Code § 33-29-2-4(b)(2) or (3)).

[15] Moreover, the small claims court does not have jurisdiction to exercise equitable powers such as ordering specific performance or injunctive relief apart from the statute. *See Plotzker*, 888 N.E.2d at 337 (observing "the small claims court did not have power to award injunctive relief apart from the statute"); *Hall*, 726 N.E.2d at 360-361 (observing that rescission of a contract is an equitable remedy and that, "as we noted in *Sanders* [*v. Area Plan Comm'n of Evansville and Vanderburgh Cnty.*, 581 N.E.2d 983 (Ind. Ct. App. 1991)] and *Buckmaster v. Platter*, 426 N.E.2d 148, 150 (Ind. Ct. App. 1981), which involved the remedy of specific performance, the small claims statute does not provide for the exercise of such extraordinary equitable powers"); *Sanders*, 581 N.E.2d at 984 ("Superior courts do not have the power to issue injunctive relief from their small claims dockets."); *Buckmaster*, 426 N.E.2d at 150 (observing that equitable powers such as specific performance and injunctive relief are beyond the jurisdiction of the superior court's small claims division).

Accordingly, the small claims court did not have jurisdiction to grant injunctive relief either in ordering that Salyer receive "the adjacent burial site just south of her burial site," Appellant's Appendix at 6, or to order that Johnson's body be removed from Gravesite #15. We therefore reverse the order of the small claims court. *See Hall*, 726 N.E.2d at 361 (vacating the portion of the small claims court's order entering an equitable remedy).

### *Conclusion*

For the foregoing reasons, we find the small claims court erred in finding the Cemetery liable for damages, and that it did not have jurisdiction to enter an order for specific performance or injunctive relief. We therefore reverse the court's order and remand for consideration of transfer to the court's plenary docket.

Reversed and remanded.

Robb, J., and Mathias, J., concur.