# FOR PUBLICATION



FILED

Dec 23 2013, 6:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**R. THOMAS BODKIN**
**J. HERBERT DAVIS**
Bamberger, Foreman, Oswald & Hahn, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**BRIAN W. WELCH**
**CARL A. HAYES**
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

ATTORNEY FOR AMICUS CURIAE
BOARD OF COMMISSIONERS OF
WARRICK COUNTY:

**S. ADAM LONG**
Long & Mathies Law Firm, P.C.
Boonville, Indiana

ATTORNEY FOR AMICUS CURIAE
CITY OF BOONVILLE:

**MARK K. PHILLIPS**
Mark K. Phillips, Attorney at Law, P.C.
Boonville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TOWN OF NEWBURGH, | ) | |
| Appellant/Cross-Appellee, | ) | |
| vs. | ) | No. 87A01-1305-CT-203 |
| TOWN OF CHANDLER, | ) | |
| Appellee/Cross-Appellant. | ) | |

APPEAL FROM THE WARRICK SUPERIOR COURT
The Honorable Lucy Goffinet, Special Judge
Cause No. 87D02-1204-CT-577

**OPINION - FOR PUBLICATION**

**SHEPARD, Senior Judge**

The legislature has authorized municipalities to provide sewer service up to four miles from their corporate boundaries, and to regulate or even prohibit other entities from doing so. When two towns each assert exclusive right to provide service in a zone where their authority overlaps, how should their conflicting claims be resolved?

<u>FACTS AND PROCEDURAL HISTORY</u>

Acting under Indiana Code sections 36-9-2-16, -17, and -18 (1980), the towns of Newburgh and Chandler in Warrick County have for decades been providing sewer services in the four-mile rings outside their boundaries. Their four-mile rings somewhat overlap.

On April 25, 2007, Newburgh adopted an ordinance exercising "an exclusive license to furnish sewer service within the Regulated Territory, and all other utilities are expressly prohibited from furnishing sewer service within the Regulated Territory, except for those customers located in the Regulated Territory that are connected to another sewer utility as of the date this Ordinance is adopted." Appellant's App. p. 76. The "Regulated Territory" includes the overlapping area between Newburgh and Chandler.

About six weeks later on June 4, 2007, Chandler adopted an ordinance with the same language, thus purporting to give Chandler an exclusive license to provide (and expressly prohibiting others from providing) new sewer services to customers in the overlapping area. *Id.* at 71-72.

Ruksam Development, LLC, approached both Newburgh and Chandler about the feasibility and cost of providing sewer services to a subdivision it planned to develop in the overlapping area. Newburgh's estimate was a good deal higher than Chandler's, so Ruksam opted to request sewer services from Chandler. Shortly thereafter, Newburgh sued Ruksam in Vanderburgh Circuit Court for violating the Newburgh ordinance.

In April 2012, Chandler sued Newburgh in Warrick Superior Court, seeking a declaratory judgment that Newburgh's ordinance could not prohibit Chandler from providing new sewer services in the overlapping area. The parties filed cross-motions for summary judgment and designations.[1] After a hearing, the trial court denied both motions. Upon Newburgh's request, the court certified its order for interlocutory appeal, and this Court accepted jurisdiction.

ISSUE

The issue presented by Newburgh's appeal and Chandler's cross-appeal is whether the trial court erred by denying the cross-motions for summary judgment.

DISCUSSION AND DECISION

Summary judgment is appropriate only where the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *City of N. Vernon v. Jennings Nw. Reg'l Utils.*, 829 N.E.2d 1, 3 (Ind. 2005). All evidence must be construed in favor of the nonmoving party,

---

[1] Each party also sought damages for the other's alleged tortious interference with its business relationship with Ruksam. Summary judgment was not sought on those claims.

and all doubts as to the existence of a material issue must be resolved against the moving party. *Id.*

Neither party really contends there are genuine issues of fact, so the question would seem to be whether these facts entitle either town to judgment as a matter of law.

Newburgh claims Chandler is prohibited from providing new sewer services to customers in the overlapping area because Newburgh was the first to adopt an ordinance to that effect. Chandler disagrees, contending among multiple counterarguments that the fact that both towns have long provided sewer services in the overlapping area vitiates the effect of Newburgh's ordinance.

The parties' arguments rest on Indiana Code sections 36-9-2-16 and -18. Section 16 provides that a municipality "may regulate the furnishing of the service of collecting, processing, and disposing of waste substances and domestic or sanitary sewage. This includes the power to fix the price to be charged for that service." For purposes of Title 36, "'[r]egulate' includes license, inspect, or prohibit." Ind. Code § 36-1-2-15 (1980).

Section 36-9-2-18 further provides that "[a] municipality may exercise powers granted by sections 2, 3, 14, 16, and 17 of this chapter in areas within four (4) miles outside its corporate boundaries."

Read together, these statutes give municipalities several powers, including the authority to prohibit the furnishing of sewer services within four miles of their boundaries. These powers, though, are not self-executing. The Code provides how they must be exercised:

4

(a) If there is a constitutional or statutory provision requiring a specific manner for exercising a power, a unit wanting to exercise the power must do so in that manner.

(b) If there is no constitutional or statutory provision requiring a specific manner for exercising a power, a unit wanting to exercise the power must . . .

(1) if the unit is a county or municipality, adopt an ordinance prescribing a specific manner for exercising the power . . . .

Ind. Code § 36-1-3-6 (1993). Here, there are no constitutional or statutory provisions requiring a specific manner for exercising the powers conferred by Sections 16 and 18. A municipality wanting to exercise one of these powers must therefore adopt an ordinance prescribing a specific manner by which it will act.

To that end, Newburgh says, it adopted the April 2007 ordinance asserting exclusive license to provide, and prohibiting others from providing, new sewer services to customers in the overlapping area. Acknowledging Chandler adopted a similar ordinance six weeks later, Newburgh argues its ordinance prevails because it was adopted first.

This state's courts have long used a first-in-time rule, in the absence of other legislative direction, to resolve disputes when two municipalities possess concurrent and complete jurisdiction of a subject matter. *See Taylor v. City of Fort Wayne*, 47 Ind. 274, 282 (1874) (group of citizens prevailed where it initiated proceedings to incorporate new town before city initiated proceedings to annex same territory); *Ensweiler v. City of Gary*, 169 Ind. App. 642, 645, 350 N.E.2d 658, 659 (1976) (city prevailed where it initiated annexation proceedings before group of citizens initiated proceedings to incorporate same territory as new town).

5

Chandler claims Newburgh's ordinance was not first-in-time because both towns had been "regulating" sewer services in the sense that they had adopted various ordinances for delivery of service. For example, Chandler points to a 1974 contract in which it agreed to provide sewer services to a customer just south of its boundary. It also points generally to 143 pages of its own ordinances adopted as early as 1965 regarding its own sewer system. None of its designated evidence, though, shows that it adopted an ordinance, prior to the ones each town adopted in 2007, prohibiting all others from providing new sewer services in the overlapping area.

Noting that "regulate," in terms of Section 16, includes fixing prices, licensing, inspecting, or prohibiting, Chandler argues the statutory definition of "regulate" should not be parsed to allow Newburgh to be first-in-time to regulate by "prohibiting" in light of the fact that both towns had long been "fixing prices," "licensing," and "inspecting." This, says Chandler, would be a "word game [that] defies logic and reality." Appellee's Br. p. 18.

Of course, this is not a common law case but rather one in which particular statutes govern. We do our best to apply the Code sections the General Assembly has enacted. As respects this dispute, the question is: when two municipalities have been "regulating"—say, by providing service to various customers in an overlapping area or even barring users from discharging sewage into natural outlets—do they both lose their authority to "regulate" by "prohibiting" others from providing service?

The discussion in *Brenwick Associates, LLC v. Boone County Redevelopment Commission*, 889 N.E.2d 289 (Ind. 2008), is instructive. The dispute there arose when

6

Boone County established an economic development area ("EDA") that included land that the town of Whitestown was attempting to annex. Whitestown argued it initiated annexation proceedings before Boone County initiated EDA proceedings and should thus prevail pursuant to *Taylor v. City of Fort Wayne* and *Ensweiler v. City of Gary*. As noted above, those cases involved disputes between citizens who wanted to incorporate new towns on the one hand and cities that wanted to annex the same land on the other.

The Supreme Court easily distinguished *Taylor* and *Ensweiler*, noting that the first-in-time rule was implicated in those cases "because the territory in question simply could not be both a new town and within the respective cities." *Brenwick*, 889 N.E.2d at 294. The first-in-time rule did not apply in *Brenwick*, it explained, because annexation and establishment of an EDA were not the same subject matter. *Id.* Moreover, Whitestown's initiation of annexation proceedings did not preclude Boone County from establishing the EDA (at least until annexation was complete), and Boone County's establishment of the EDA did not preclude Whitestown from completing annexation. *Id.* at 295.

Before Newburgh's 2007 ordinance, the situation was similar to that in *Brenwick*. That is, neither town precluded the other from providing sewer service to particular customers in the overlapping area. It was not until the towns each decided to exercise exclusive jurisdiction that a conflict arose. At that point, the situation fit within *Taylor* and *Ensweiler* because new sewer services could not be provided exclusively by Newburgh at the same time they were provided exclusively by Chandler.

Chandler also questions the notion that Section 36-9-2-16 actually empowers a municipality to prohibit *all* others from providing sewer services. It points to legislation about the effect of issuance of an Indiana Utility Regulatory Commission certificate of territorial authority to a sewage disposal company: "no other sewage disposal company shall render sewage disposal service in the area." Ind. Code § 8-1-2-89(g) (1992). Chandler says this demonstrates that the General Assembly is altogether able to create explicit authority to exclude when it so intends—and did not use such language in Section 16.

To be sure, this IURC statute is very explicit about barring another provider, but it is hard to see much ambiguity in the statutes about municipal sewer service that govern this case. The Code authorizes municipalities to regulate sewer service and says that this regulation includes the power to "prohibit." This is exactly what Newburgh did when it adopted its 2007 ordinance.

Chandler also argues that because the legislature gave it the statutory power to provide sewer services within four miles outside its boundaries, Newburgh may not take away that statutory power by adopting an ordinance. This argument is misplaced. Newburgh is not trumping any statute with its ordinance. While Sections 16 and 18 confer certain powers, towns must adopt ordinances to exercise them. The Newburgh ordinance simply exercises the statutory authority conferred on the town, just as Chandler's later ordinance was drafted to do.

Chandler nonetheless cites a provision of the Home Rule Act that says a municipality "does not have . . . [t]he power to impose duties on another political

8

subdivision, except as expressly granted by statute." Ind. Code § 36-1-3-8(a)(3) (2005). The Indiana Supreme Court, however, has held that this provision does not bar municipalities "from enforcing against other political subdivisions those regulations of general applicability which are specifically authorized by statute." *City of Crown Point v. Lake Cnty.*, 510 N.E.2d 684, 686 (Ind. 1987); *see Town of Avon v. W. Cent. Conservancy Dist.*, 957 N.E.2d 598, 606 (Ind. 2011) (town entitled to regulate other political units' attempt to take water from aquifer pursuant to its ordinance adopted under statutory authority).

Chandler then argues that *City of North Vernon v. Jennings Northwest Regional Utilities*, 829 N.E.2d 1 (Ind. 2005), compels a decision in its favor. There, the Jennings County Commissioners petitioned the Indiana Department of Environmental Management to form a regional water and sewer district for the northwest portion of Jennings County. IDEM granted the request, established Jennings Northwest Regional Utilities, and authorized JNRU to provide sewer service in areas just outside North Vernon's corporate boundaries. At the time the order was entered, North Vernon was already providing sewer services to areas IDEM identified as JNRU's service district. When a new elementary school in one of those areas opted to obtain sewer services from North Vernon, JNRU sued North Vernon, seeking a declaratory judgment that JNRU had the exclusive right to serve the school.

The Indiana Supreme Court acknowledged that IDEM expressly granted JNRU the power to provide sewer services in the area where the school was located and that our Home Rule Act provides that a municipality "may exercise any power it has to the extent

9

that the power . . . is not expressly granted to another entity." Ind. Code § 36-1-3-5(a)(2) (1993). Nonetheless, it found that strict application of this provision, which would result in judgment for JNRU, was at odds with the express grant of statutory authority given to municipalities to operate sewer facilities within and without their corporate boundaries.

Strict application was *also* at odds with the statutory scheme of the Home Rule Act, which demonstrated "a legislative intent to provide counties, municipalities, and townships with expansive and broad-ranging authority to conduct their affairs." *North Vernon*, 829 N.E.2d at 5. The Court thus held that "where there is an overlap between the service area of a regional district and the service area of a municipality, and absent a resolution during the IDEM permitting process, under the 'expressly granted' provision of the Home Rule Act, the district prevails unless the municipality was already providing services to the area at the time the district's service area was created." *Id.* at 7. The Court thus concluded that North Vernon had the exclusive right to provide sewer services to the school. *Id.*

Chandler claims *North Vernon* supports its argument for two reasons, neither of which are persuasive. First, it notes that the opinion is silent on whether North Vernon ever adopted an ordinance to exercise exclusive authority and urges us to conclude that its provision of service was enough to do so. The opinion's silence as to the adoption of an ordinance, though, may be for the benign reason that the parties did not identify it as an issue. Regardless, as noted above, the Code is clear that a municipality wanting to exercise the powers conferred by Section 36-9-2-16 must adopt an ordinance prescribing a specific manner for doing so.

10

Second, Chandler asserts that it was North Vernon's provision of sewer services in the disputed area *before* JNRU's service area was created that led the Court to rule for North Vernon. As in that case, Chandler argues, it should prevail because it was providing services in the overlapping area before Newburgh adopted its 2007 ordinance. This argument does not account for the reason the Supreme Court found North Vernon's provision of sewer services determinative: the establishment of JNRU's service area conflicted with both the express statutory authority allowing *municipalities* to provide sewer services outside their boundaries as well as the Home Rule Act's policy providing *municipalities* with expansive authority to conduct their affairs. The determinative factor in *North Vernon*, a dispute between a municipality and a regional sewer district, simply does not carry over to the case before us, a dispute between two municipalities.

Finally, Chandler and two *amici curiae*, the Warrick County Commissioners and the City of Boonville, argue that enforcement of Newburgh's 2007 ordinance will chill economic development. They allege Newburgh enforces its ordinance only in situations where significant sewer service fees are expected, which makes developers hesitant to invest in projects in Newburgh's extraterritorial service area for fear they will be subjected to lawsuits if they choose a cheaper sewer provider. Chandler and *amici* also point out that having competing sewer service providers benefits customers and has been the norm for decades. They further note that a town could stake its claim to a particular area irrespective of its ability to provide service there.[2]

---

[2] Chandler also argues that Newburgh should be judicially estopped from claiming exclusivity because it sought to intervene in a Utility Regulatory Commission proceeding in which Chandler was seeking

These arguments possess some weight. Resolution of disputes like the one before us by a commission in the executive branch could likely produce more effective and efficient results. The creation of such mechanisms, however, is in the domain of the legislature and not the courts. The statutes as they exist authorized Newburgh's ordinance prohibiting others from providing new sewer services to customers within four miles of its corporate boundaries.

## CONCLUSION

We therefore affirm the trial court's denial of summary judgment to Chandler, reverse its denial of summary judgment to Newburgh, and remand with instructions to enter summary judgment for Newburgh.

Affirmed in part, reversed in part, and remanded.

BAKER, J., and BROWN, J., concur.

---

exclusive license for water service. There, Newburgh argued that service should be "open and subject to customer choice." Appellee's App. p. 380. To be sure, Newburgh's earlier statements provide some awkwardness in this litigation, but the Indiana Supreme Court has regularly held that estoppel is not usually applicable to government units. *See, e.g.*, *Biddle v. BAA Indianapolis, LLC*, 860 N.E.2d 570, 581 (Ind. 2007); *Dep't of Local Gov't Fin. v. Commonwealth Edison Co. of Ind., Inc.*, 820 N.E.2d 1222, 1228 (Ind. 2005).