

FILED

Jul 22 2020, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jeremy L. Fetty
Aleasha J. Boling
Indianapolis, Indiana

Kent M. Frandsen
Lebanon, Indiana

ATTORNEYS FOR APPELLEES

Barry A. Hall
Muncie, Indiana

Mark R. McKinney
Muncie, Indiana

Randall C. Helman
Chief Deputy Consumer Counselor
Indianapolis, Indiana

Karol H. Krohn
Deputy Consumer Counselor
Indianapolis, Indiana

William I. Fine
Indiana Utility Consumer
Counselor
Indianapolis, Indiana

Curtis T. Hill, Jr.
Attorney General of Indiana
Indianapolis, Indiana

Aaron T. Craft
Deputy Attorney General
Indianapolis, Indiana

Beth E. Heline
General Counsel Indiana Utility
Regulatory Commission
Indianapolis, Indiana

Jeremy Comeau
Assistant General Counsel Indiana
Utility Regulatory Commission
Indianapolis, Indiana


Steve Davies
Assistant General Counsel Indiana
Regulatory Commission
Indianapolis, Indiana

Christopher L. Bills
Muncie, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Delaware County Regional Wastewater District, <br> *Appellant,* <br><br> v. <br><br> Muncie Sanitary District, et al., <br> *Appellees.* | July 22, 2020 <br><br> Court of Appeals Case No. 19A-EX-2964 <br><br> Appeal from the Indiana Utility Regulatory Commission <br><br> The Honorable James F. Huston, Chairman <br><br> The Honorable David E. Ziegner, Sarah E. Freeman, Stefanie Krevda, David Oder, Commissioners. <br><br> The Honorable David E. Veleta, Senior Administrative Law Judge <br><br> Cause No. 45055 |

**Altice, Judge.**

## Case Summary

[1] The Common Council of the City of Muncie (City Council) passed Muncie City Ordinance 16-2015 (the Ordinance), which, with certain exceptions, granted the Muncie Sanitary District (MSD) an exclusive license to provide sewer service to customers in unincorporated areas within four miles of the city's municipal corporate boundaries (the Regulated Territory).[1] Pursuant to Ind. Code § 8-1.5-6-9, MSD filed a petition with the Indiana Utility Regulatory Commission (the Commission) for approval of the Ordinance. As is relevant to this appeal, the Delaware County Regional Wastewater District (DCRWD) intervened and asserted that the Regulated Territory included areas within DCRWD's existing sewer service territory. Following a hearing, the Commission granted MSD's petition, approving the Ordinance with certain amendments. DCRWD now appeals, asserting that the Commission lacked the statutory authority to approve the Ordinance and its order was contrary to law.

[2] We affirm.

## Facts & Procedural History

[3] MSD is a municipal department of sanitation created pursuant to an ordinance adopted under Ind. Code § 36-9-25-1(b) in 1968. MSD provides sewer service

---

[1] In visual terms, the Regulated Territory forms a donut shape around Muncie.

to over 27,000 residential, institutional, industrial, and commercial customers within the Muncie corporate boundaries as well as some customers in unincorporated areas around the city through sewer service agreements.

[4] DCRWD is a regional district created in 1976 by order of the Stream Pollution Control Board (SPCB), predecessor to Indiana Department of Environmental Management (IDEM), pursuant to Ind. Code Chapter 19-3-1.1. SPCB's order provided that DCRWD's service territory consisted of:

> all the territory in Delaware County except the territory currently being serviced by the Muncie Sanitary District, the two areas proposed to be annexed by the Muncie Sanitary District, and the territory within the corporate limits of the Towns of Eaton, Yorktown, Albany, Gaston, and the sewer service area of the Town of Selma, Delaware County, Indiana.

*Exhibits Vol. 2* at 120. DCRWD has continuously operated pursuant to the statutory authority in Ind. Code Chapter 19-3-1.1 and its successor statutes found in Ind. Code Article 13-26 (the IDEM Statutes).[2] DCRWD serves approximately 3000 customers in rural areas of Delaware County. DCRWD owns its own collection system but does not have a wastewater treatment facility (WWTF), and it contracts for treatment of its collected wastewater with three entities, including MSD.

---

[2] The IDEM Statutes are found in Title 13 Environment, Article 26 Regional Water, Sewage, and Solid Waste Districts. Ind. Code § 13-26-1-1 provides that any area may be established as a regional sewer district to provide for the collection, treatment, and disposal of sewage inside and outside the district.

[5]     I.C. § 36-9-2-18 allows municipalities, including MSD, to "exercise powers" – in this case, provide sewer service – within four miles of their boundaries. Pursuant to that authority, the City Council on July 10, 2015 passed the Ordinance, which provides:

> Upon the adoption of this Ordinance, [MSD] shall hold an exclusive license to furnish sewer service within the Regulated Territory, and all other utilities are expressly prohibited from furnishing sewer service within the Regulated Territory, except for those customers located in the Regulated Territory that are connected to another sewer utility as of the date this Ordinance is adopted.

*Exhibits Vol. 1* at 32. The Ordinance addressed the possibility of areas of "disputed" territory:

> [T]he General Assembly in enacting Indiana Code § 8-1.5-6 has recognized that in exercising its future development planning Indiana municipalities will encounter disputed areas of claimed service exclusivity and has provided an administrative solution to said conflicts by a resolution procedure under the jurisdiction of the Indiana Utility Regulatory Commission[.]

*Exhibits Vol. 1* at 31. Ind. Code Chapter 8-1.5-6 (the Regulated Territories Statutes), referred to in the Ordinance, was enacted in 2014 and is found in Title 8 Utilities and Transportation, Article 1.5 Municipal Utilities, Chapter 6 Utility Service in Regulated Territories. At issue in this appeal is whether the Commission had the authority under the Regulated Territories Statutes to approve the Ordinance giving MSD the license to provide sewer service in parts of DCRWD's already-existing service territory. This presents us with an issue

of first impression, and we discuss the Regulated Territories Statutes more fully in the Discussion section of this opinion.

[6] The Ordinance provided that it was not effective or enforceable until approval from the Commission was secured. *See also* I.C. § 8-1.5-6-9(b) (municipality may not enforce a regulatory ordinance until the Commission issues an order approving it). On February 27, 2018, MSD filed a petition with the Commission seeking approval of the Ordinance. Pursuant to I.C. § 8-1.5-6-9(b), a petition must include: (1) a description of the service territory established in the regulatory ordinance; (2) proposed rates and charges for the services to be provided in the service territory; (3) a list of any administrative or judicial proceedings involving the regulatory ordinance; and (4) *a list of any utilities actually or potentially affected by the regulatory ordinance.* (Emphasis added).

[7] As to utilities actually or potentially affected, MSD's petition stated in part:

> 9. [DCRWD] currently operates as a regional district established under Ind. Code § 13-26 in Delaware County, Indiana.
>
> 10. The four mile area outside of Muncie's corporate boundaries *includes an area of overlap with the territory established as the DCRWD.* The MSD provides sewage treatment services for DCRWD through contractual agreement.
>
> 11. Ordinance 2015-16 does not claim jurisdiction over new or existing customers with the DCRWD service area. Ordinance 2015-16 does claim exclusive jurisdiction over customers within four miles outside of Muncie's corporate boundaries that were

not within an existing district or currently already being served by another utility at the time of the Ordinance's passing.

12. The MSD currently serves in excess of 27,000 customers within the corporate boundaries of the City of Muncie and in excess of 1,700 customers in the unincorporated area around the City of Muncie through sewer service agreements. To do so, The MSD has built and maintained its systems such that it is ready and able to offer service to all customers within the Ordinance 2015-16 regulated territory who may reasonably request service. . . .

*Exhibits Vol. 1* at 26 (emphasis added). With regard to rates, the petition stated that the proposed rates for the Regulated Territory would be the same as the rates that apply to all MSD customers and those approved by the Board of Sanitary Commissioners.

[8] On March 26, 2018, DCRWD filed its petition to intervene, asserting that DCRWD had substantial interests in that cause because MSD was seeking approval of the Ordinance "authorizing it to provide sewer service in certain unincorporated areas of Delaware County, which include areas where DCRWD is already providing service or is in a better position to provide service." *Appellant's Appendix Vol. 2* at 35. On April 11, 2018, the Commission granted DCRWD'S petition to intervene.[3] The Commission adopted an agreed

---

[3] Liberty Regional Waste District (LRWD) and the Town of Yorktown also intervened. MSD treats the wastewater of LRWD and has since 1978. Any service disputes between those two entities and MSD were resolved and are not expressly at issue in this appeal. Therefore, we focus the facts on those relevant to the issues involving DCRWD.

procedural schedule, with an evidentiary hearing ultimately occurring on January 17, 2019.

[9] Prior to the hearing, the parties pre-filed evidence with the Commission. The Office of Utility Consumer Counselor (OUCC) filed the direct testimony and accompanying exhibits of Carl Seals, Utility Analyst in the OUCC'S Water/Wastewater Division, voicing the OUCC's position in favor of the Ordinance. MSD filed the direct testimony and accompanying exhibits of Michael R. Cline, P.E., member of MSD's Board of Sanitary Commissioners. DCRWD filed the direct testimony of John Brooke, member of DCRWD's Board of Trustees.[4] At the January 17, 2019 evidentiary hearing, the Commission admitted the pre-filed testimony and exhibits from the various parties and heard live testimony from, among others, Cline, Brooke, and Seals.

[10] In determining whether to approve an ordinance, the Commission is required to consider public interest factors as set forth in I.C. § 8-1.5-6-8(g), which include: (1) the ability of another utility to provide service in the regulated territory; (2) the effect of a Commission order on customer rates and charges for service provided in the regulated territory; (3) the effect of the Commission's order on present and future economic development in the regulated territory; (4) the history of utility service in the regulated territory, including any contracts for utility service entered into by the municipality that adopted the regulatory

---

[4] LRWD and the Town of Yorktown also filed direct testimony of witnesses and exhibits.

ordinance and any other municipalities, municipal utilities, or utilities; and (5) any other factors the commission considers necessary.

[11] Here, evidence was presented that MSD provides sewage treatment service to DCRWD. MSD owns 91 miles of combined sewer pipe, 245 miles of separate storm sewer pipe, and 306 miles of separate sanitary sewer pipe. MSD has one treatment plant, 26 lift stations, and 4 Army Corps of Engineers Flood Stations. MSD's treatment plant is a Class 4 plant, with 24-million gallons per day capacity and is about 40 acres in size. MSD has approximately 200 employees. In addition to providing service to the city of Muncie, MSD had been providing sewer service to some households outside of the city boundaries after being approached by homeowners whose septic systems failed or were failing. MSD was also providing service to Cowan Community Schools, as their system was in disrepair. DCRWD had been offered to provide service to Cowan but ultimately did not proceed in doing so.

[12] At the time of the hearing, DCRWD was collecting wastewater for around 3000 customers in rural Delaware County. Its collection system consisted of over 187,000 lineal feet of gravity sewer lines, over 114,000 lineal feet of force main, over 20,000 feet of 8-24" pipe, and over 140 lift stations and grinder pumps. DCRWD contracts with three providers to treat the collected wastewater: Chesterfield, Yorktown, and MSD. DCRWD presented evidence that it had entered into an interlocal agreement with LRWD regarding construction of a WWTF to serve those two districts and had completed a preliminary engineering report regarding the proposed project. DCRWD also presented

evidence that it had a long-term plan to increase customer base and had over $1 million set aside for future projects and had a bond reserve for that purpose.

[13] Cline's submitted rebuttal testimony characterized DCRWD's plans to build a new treatment plant as speculative. MSD provided discovery responses from DCRWD, which in Cline's view illustrated that, even if DCRWD built its own treatment plant, it would be sized to serve existing, not new, customers. In response to DCRWD's concerns about not being able to expand, Cline stated that if a territory dispute would arise over existing or future customers in need of sewer service in the four-mile area, MSD would be willing to work with other sewer providers, including DCRWD and LRWD, to discuss the most cost effective and readily available service to the customer, suggesting that "MSD would be willing to establish a joint Committee of Board members from DCRWD, LRWD, and MSD to meet and resolve these disputes in a manner consistent with the public interest." *Exhibits Vol. 2* at 107.

[14] During the hearing, MSD agreed to amend the Regulated Territory in several respects: First, it agreed to exclude the territory where LRWD was currently providing service. Second, MSD entered into a stipulation with Yorktown specifying that MSD would not seek to serve areas within Yorktown's boundaries. Third, MSD agreed to expressly exclude from its Regulated Territory the area where DCRWD was currently providing wastewater service.

[15] On July 18, 2019, DCRWD filed a petition to reopen the record, requesting that the Commission allow it to present additional evidence that had come to light

since the January 2019 evidentiary hearing. The Commission granted the motion, and conducted an additional evidentiary hearing on October 21, 2019, during which DCRWD and MSD provided supplemental testimony. DCRWD presented evidence concerning federal grand jury indictments against a Muncie employee and a Muncie contractor. MSD responded that the ongoing investigation is not of Muncie itself, but of certain individuals who may have acted inappropriately.

[16] The Commission issued its final order on November 27, 2019, approving the Ordinance with the above-mentioned three amendments to the regulated territory. The Commission's final order made findings on the public interest factors set out in I.C. § 8-1.5-6-8(g). With regard to the ability of another utility to provide service in the regulated territory, the Commission found that MSD was able to provide service to the public in the Regulated Territory and DCRWD was unwilling or unable to provide service to the Regulated Territory. With regard to rates that would be charged, the Commission found that MSD's rate would be less than or comparable to DCWRD's rate. As to the effect on present and future economic development, the Commission found that the Ordinance would promote economic growth by providing certainty of service to customers and developers, and using MSD as a single provider of service would eliminate confusion as to what entity was responsible. The Commission observed that the Delaware County Health Department (DCHD) had contacted MSD about providing service to some homeowners and

[p]resently numerous homes in the Burlington area are on pump and haul orders from the DCHD. Because of this, homeowners are incurring additional monthly costs, which is an economic burden. This burden could affect the economic wellbeing and growth of the [] Regulated Territory … the only other utility claiming the ability to serve customers in the [] Regulated Territory, DCRWD, could not do so on a timely basis … delay in service to customers in need does not provide for the economic wellbeing of the [] Regulated Territory.

*Appellant's Appendix Vol. 2* at 31. As to the history of utility service in the Regulated Territory, the Commission found that MSD had invested in infrastructure, engineering, and construction over the years, including to handle the Cowan schools, which had been offered to but ultimately not pursued by DCRWD. The Commission determined that the public interest would be served by the passing of the Ordinance and approved it. DCRWD now appeals.

## Discussion & Decision

[17] Acting under the Regulated Territories Statutes, specifically I.C. § 8-1.5-6-6, the Commission approved the Ordinance that, with certain exceptions, granted MSD an exclusive license to provide sewer service within the Regulated Territory. DCRWD asserts that the Commission "did not have the authority to disturb the territory granted to DCRWD by the SPCB pursuant to [the IDEM Statutes]." *Appellant's Brief* at 5. The sole issue DRRWD raises on appeal "is the Commission's jurisdiction and authority to issue its order authorizing MSD to operate in DCRWD's service territory[.]" *Reply Brief* at 7.

[18] This court reviews Commission orders using a multi-tiered standard.[5] *N. Ind. Pub. Serv. Co. v. U.S. Steel Corp.,* 907 N.E.2d 1012, 1016 (Ind. 2009); *Citizens Action Coal. of Ind., Inc. v. Indianapolis Power & Light Co.*, 74 N.E.3d 554, 562 (Ind. Ct. App. 2017). First, the court determines whether the Commission's findings of basic fact are supported by substantial evidence. *U.S. Steel Corp.*, 907 N.E.2d at 1016. In conducting that review we neither reweigh the evidence nor assesses the credibility of witnesses and consider only the evidence most favorable to the Commission's findings. *Id.* Second, we determine whether the Commission's order contains "specific findings on all the factual determinations material to its ultimate conclusions" and whether the Commission's conclusions of ultimate fact are reasonable. *Id.* (citation omitted). The Commission's orders are also "subject to review as contrary to law," and "this constitutionally preserved review is limited to whether the Commission stayed within its jurisdiction and conformed to the statutory standards and legal principles involved in producing its decision, ruling, or order." *Hamilton Se. Utilities, Inc. v. Ind. Util. Regulatory Comm'n*, 135 N.E.3d 902, 908 (Ind. Ct. App. 2019), *trans. denied*. "Any issue regarding [t]he [IURC]'s jurisdiction ... is a legal question that [appellate courts] review de novo." *Tyus v. Indianapolis Power & Light Co.*, 134 N.E.3d 389, 398 (Ind. Ct. App. 2019) (internal quotations omitted). "This third tier, a review of whether

---

[5] The Commission is expressly excepted from the Administrative Orders and Procedures Act. Ind. Code § 4-21.5-2-4(a)(8).

the Commission's action was contrary to law, is precisely what DCRWD has requested in this appeal."[6] *Reply Brief* at 9.

[19] DCRWD's argument is that "the IDEM [S]tatutes, under which DCRWD was created and now operates, should govern DCRWD's rights within its own statutorily granted territory[,]" not the Regulated Territories Statutes, and to the extent that they conflict, DCRWD argues that the IDEM Statutes should control. *Reply Brief* at 14. We begin by examining the Regulated Territories Statutes, pursuant to which the Commission issued its order.

[20] The legislature passed the Regulated Territories Statutes in 2014. I.C. § 8-1.5-6-3 defines a "regulatory ordinance" as "an ordinance adopted by a municipality that: (1) asserts the exclusive authority of a municipal utility to provide service within a regulated territory; or (2) prohibits another utility from providing utility service in the regulated territory." Under both subsections (1) and (2), the Ordinance at issue is a "regulatory ordinance"' because it asserts the exclusive authority for MSD to provide sewer service within the four miles outside the corporate boundaries of Muncie and because it prohibits any other utility from providing service in that area where they are not already serving.

---

[6] While DCRWD notes "the disputed nature" of a number of facts that MSD and the Commission present as undisputed in their appellate briefs, DCRWD states that "the Commission's fact finding in this matter is not the issue that DCRWD has raised with the Court on appeal" and that this court's "analysis *should not even reach* the Commission's fact finding because the Commission acted outside of its jurisdiction in issuing its order." *Appellant's Reply Brief* at 7, 17 (emphasis added); *see also id.* at 8 ("This case presents the purely legal issue of the limitations on the Commission's jurisdiction."). Given DCRWD's repeated affirmations that the Commission's findings are not at issue in this appeal, we do not address the sufficiency of the evidence supporting the Commission's factual findings.

I.C. § 8-1.5-6-2 defines "regulated territory" to be "the area outside the corporate boundaries of a municipality described in: (1) I.C. § 36-9-2-18; or (2) I.C. § 36-9-23-36." The four-mile area at issue is a "regulated territory" because it is an area outside of the corporate boundaries of Muncie as described by I.C. § 36-9-2-18.

[21] I.C. § 8-1.5-6-9(b) provides that "[a] municipality may not enforce a regulatory ordinance until the commission issues an order" and "[t]he municipality shall petition the commission for approval of the regulatory ordinance[.]" The petition must include, among other things, *a list of any utilities actually or potentially affected* by the regulatory ordinance. I.C. § 8-1.5-6-9(b)(4) (emphasis added). I.C. § 8-1.5-6-4 defines the term "utility" as "any utility" that provides "wastewater service … regardless of whether that utility is under the jurisdiction of the commission for the approval of rates and charges." Thus, DCRWD is a "utility" within the statute's definition as it provides wastewater service in the Regulated Territory. By requiring the petitioner to list any other affected utilities, the statute recognizes a possible overlap in service from competing utilities.

[22] I.C. § 8-1.5-6-9(c) provides that, after notice and hearing, the Commission:

> shall issue an order resolving all issues presented in the petition described in subsection (b), including the enforceability of the regulatory ordinance in the manner that the commission determines is in the public interest. In making a determination of the public interest, the commission shall consider the factors set forth in section 8(g) of this chapter.

In determining the public interest under Section 8(g), the Commission is required to consider: (1) *the ability of another utility to provide service* in the regulated territory; (2) the effect on customer rates; (3) the effect on economic development, (4) *the history of utility service in the regulated territory*; and (5) any other factors the Commission considers necessary. I.C. § 8-1.5-6-8(g) (emphases added). That the statute requires the Commission to consider the history of the utilities providing service in the area and the ability of other utilities to provide service demonstrates that the Regulated Territories Statutes contemplate competing territorial claims for the Commission to resolve.

[23] I.C. § 8-1.5-6-6 addresses jurisdiction and is the authority under which the Commission acted to approve the Ordinance. It provides:

> Notwithstanding any other provision in this title or IC 36, the offering or provision of service by a utility in a regulated territory is under the jurisdiction of the [C]ommission as set forth in sections 7, 8, 9, and 10 of this chapter.

(Emphases added.) This section reflects that the Commission has jurisdiction of the "provision of service by a utility" – and as already stated DCRWD is a utility within the meaning of the statute – "in a regulated territory" – which the disputed four-mile area is. We agree with the Commission that "[t]he General Assembly passed the Regulated Territories Statute[s] in 2014 for the purpose of making the Commission the referee in disputes over service in regulated areas." *Appellee Commission's Brief* at 14.

[24] In support of its assertion that it should prevail in the dispute with MSD, DCRWD relies on *City of North Vernon v. Jennings Northwest Regional Utilities*, 829 N.E.2d 1 (Ind. 2005). There, the Court was presented with a territorial dispute, in which a municipality, North Vernon, was expanding its sanitary service outside of its municipal boundaries and into the territory of a regional wastewater district, Jennings Northwest Regional Utilities (JNRU), which was established by IDEM order under the IDEM Statutes. The order creating JNRU excluded North Vernon's corporate boundaries from the JNRU service area, but North Vernon had already been providing service outside of its corporate boundaries at the time JNRU was created, creating an overlap between JNRU'S service area and North Vernon's service area. After North Vernon secured a 30-year agreement to provide services to a school in the overlapping territory, JNRU sought a declaratory judgment that it had the exclusive right to serve the school.

[25] In arguing that it was entitled to provide the services, North Vernon relied on its broad powers under the Home Rule Act, I.C. §§ 36-1-3-1 to -9, which grants municipalities not only all powers granted to it by statute, but also "all other powers necessary or desirable in the conduct of its affairs, even though not granted by statute." I.C. § 36-1-3-4(b)(2). The Home Rule Act also contains limiting language, however, providing that "a unit may exercise any power it has to the extent that the power: (1) is not expressly denied by the Indiana Constitution or by statute; and (2) is not expressly granted to another entity." I.C. § 36-1-3-5(a)(1)-(2). Relying on the "expressly granted to another entity"

language, JNRU argued that because IDEM had "expressly granted" it authority to provide service in the area, the Home Rule Act did not provide relief to North Vernon.

[26]   The *Jennings* Court observed that "disputes of this kind ordinarily are resolved during administrative proceedings," but there existed "no . . . statutory dispute resolution mechanism for territorial boundary disputes between municipalities and regional district." *Jennings*, 829 N.E.2d at 7.  Consequently, the Court explained:

> We must therefore reconcile the broad-ranging authority granted municipalities under the Home Rule Act and Indiana Code section 36-9-23-36 (granting municipalities the authority to provide sewer services "in areas within ten (10) miles outside its corporate boundaries") with the powers granted regional districts under Indiana Code sections 13-26-1 to -14.  In doing so we conclude that where there is an overlap between the service area of a regional district and the service area of a municipality, and absent a resolution during the IDEM permitting process, under the "expressly granted" provision of the Home Rule Act, the district prevails unless the municipality was already providing services to the area at the time the district's service area was created.

*Id*.  Because, there, the town of North Vernon was already providing service to the disputed area when JNRU was created, North Vernon prevailed.

[27]   DCRWD urges that, unlike North Vernon, MSD was not already providing service to the now disputed areas and, under the reasoning of *Jennings*, it should prevail.  We disagree that *Jennings* controls here.  *Jennings* was decided nine

years before the enactment of the Regulated Territory Statutes, and the Court conducted its analysis in the absence of any dispute-resolution mechanism created by the legislature. In fact, the *Jennings* Court expressly recognized that the lack of an existing dispute resolution mechanism required it to reconcile the Home Rule Act provisions with the powers granted to regional districts by the IDEM Statutes. By enacting I.C. § 8-1.5-6-6, the legislature specifically put the provision of service by a utility in a regulated territory or the approval of a regulatory ordinance under the jurisdiction of the Commission.

[28]     As noted by MSD and the Commission, the creation of the Regulated Territories Statutes appears to be in direct response to another territorial dispute case, *Town of Newburgh v. Town of Chandler*, 999 N.E.2d 1015, 1021 (Ind. Ct. App. 2013), *trans. denied*, which involved a dispute between two municipal sewer service providers that, for decades, had been providing service in the four-mile ring outside their respective boundaries pursuant to I.C. §§ 36-9-2-17, -18, -19. The towns' respective four-mile rings somewhat overlapped. In April 2007, Newburgh adopted an ordinance stating that it had an exclusive license to furnish sewer service in the regulated territory, and six weeks later, Chandler adopted a similar ordinance. A developer approached both towns about providing service to a new subdivision in the overlapping area, and ultimately, the developer contracted for service with Chandler, prompting Newburgh to sue the developer for violating its ordinance. Chandler responded by suing Newburgh seeking a declaratory judgment that Newburgh's ordinance could not prohibit Chandler from providing services in the overlapping area. Both

towns argued that the provisions of Ind. Code Chapter 36-9-2 granted them the statutory power to regulate and provide service in the four miles outside their towns, and both had passed ordinances to do so.

[29] On appeal, this court discussed the *Jennings* case but found that *Jennings* involved a dispute between a municipality and a regional sewer district, unlike the dispute between the two municipalities in *Chandler*. The *Chandler* court ultimately found for Newburgh but observed:

> Resolution of disputes like the one before us by a commission in the executive branch could likely produce more effective and efficient results. The creation of such mechanisms, however, is in the domain of the legislature and not the courts.

*Chandler*, 999 N.E.2d at 1021. *Chandler* was decided on December 23, 2013, rehearing was denied in February 2014, and transfer was denied in July 2014. In March 2014, the Regulated Territories Statutes became effective, vesting the Commission with the authority to resolve all issues raised in a petition to approve a regulatory ordinance, which may include addressing other utilities that are or could provide service in the area, and places the provision of service by a utility in a regulated territory under the jurisdiction of the Commission. I.C. §§ 8-1.5-6-6, -9(c).

[30] DCRWD urges that the Regulated Territories Statutes do "not purport to withstand – nor [] even mention – the contrary provisions of Ind. Code Art. 13-26 and its predecessor statutes, under which DCRWD was created[,]" and therefore the Commission did not have the authority "to override" those

statutes. *Appellant's Brief* at 20, 23. We disagree. The IDEM Statutes that DCRWD relies on concern establishment and regulation of regional waste districts, and while they address objections at the time a district is established, those statutes do not address resolution of competing territorial claims between an existing waste district and another wastewater utility. The Regulated Territories Statutes do so.

[31] In sum, the Regulated Territories Statutes task the Commission, when presented with a petition to approve a regulatory ordinance, with resolving territorial disputes by considering any utilities that are actually or potentially affected by a regulatory ordinance (including regional districts), evaluating their ability to provide service and their history of service, and making a decision that is in the best interest of the public. Accordingly, we find that in this case the Commission had the jurisdiction and authority to approve the Ordinance and its order was, therefore, not contrary to law.

[32] Judgment affirmed.

Bailey, J. and Crone, J., concur.